[ Argued Oct. 26, decided Nov. 21, 1892, and rehearing denied Dec. 12, 1892.]

## KING REAL ESTATE ASSOCIATION ET AL. *v.* CITY OF PORTLAND.

[S. C. 31 Pac. Rep. 482.]

STATUTORY CONSTRUCTION—"MAY"—"MUST."—The word "may" is construed "must" when the legislature means to impose a positive duty and not merely to give a discretionary power. But it is only where it is necessary to give effect to the clear intention of the legislature that it can be construed in a mandatory sense; and where there is nothing in the connection of the language or in the sense and policy of the provision to require an unusual interpretation, its sense is merely permissive and discretionary.

Multnomah County: E. D. SHATTUCK, Judge.

Defendant appeals. Reversed.

*Wm. T. Muir*, city attorney, for Appellant.

*F. A. E. Starr*, and *Julius C. Moreland* ( *W. E. Thomas* on the brief ), for Respondent.

LORD, C. J.—The plaintiffs are owners of several separate parcels of real estate in the city of Portland. The common council of such city caused a sewer to be

constructed in L street, and proceeded to estimate the cost thereof, and to apportion and assess the same upon the property directly benefited, including the property of the plaintiffs. The plaintiffs made an application to the circuit court for a writ of review, and upon the return of the writ a trial was had and judgment rendered in favor of the plaintiffs, cancelling and annulling the assessments made against their property. From that judgment the city has brought this appeal.

The only question raised is, whether the common council had the power under its charter to apportion and assess upon the property directly benefited the cost for the construction of the sewer. The contention for the plaintiffs is, that the common council had no power or authority to determine the amounts the different parcels of realty should pay for a sewer improvement, but that it must appoint assessors for that purpose as directed by the proviso of section 121 of the charter (Sess. Laws, 1882, 171). This section provides as follows: "The council shall have the power to lay down all necessary sewers and drains, and cause the same to be assessed on the property directly benefited by such drain or sewer, but the mode of apportioning estimated costs of improvements of streets prescribed in sections 112 and 113 of chapter X. of this act shall not apply to the construction of such sewers and drains; and when the council shall direct the same to be assessed on the property directly benefited, such expense shall, in every other respect, be assessed and collected in the same manner as is provided in the case of street improvements; *provided*, that the council may at its discretion appoint three disinterested persons to estimate the proportionate share of the cost of such sewer or drain to be assessed to the several owners of the property benefited thereby." In the view urged by plaintiffs the power of the council to make assessments for sewer purposes cannot be exercised in any other manner than as prescribed in the section set out. This construction is based on the idea that the words

"may at its discretion" must be regarded as mandatory, or the equivalent of "must," rendering the exercise of the power to "appoint three disinterested persons to estimate the proportionate share of the cost of such sewer" not permissive, or at the option of the council, but mandatory.

It is a familiar rule of interpretation that the word "may" in a statute is sometimes used in a directory, and sometimes in a permissive sense. It has always been construed "must" or "shall" whenever the rights of third persons or the public good requires it. But this is so only when it is necessary to give effect to the intention of the legislature, as where it is clear that such intention is to impose a positive and absolute duty, and not merely to give a discretionary power. Hence the rule is laid down that where power is given to public officers by a statute, whenever the public interests or individual rights call for its exercise, the language used, though permissive in form, is in fact peremptory: *Supervisors* v. *U. S.* 4 Wall. 446; 14 Am. & Eng. Enc. 979. Nor does counsel for the defendant deny this rule of construction, but contends that there is no occasion for its application. While it is admitted that the public, as well as third persons, have an interest in the construction of sewers, and in the assessments levied to defray the costs thereof, he insists that when section 121, *supra*, is taken in connection with section 100, to which its language is claimed to refer, the intention is to give the common council of the city the power to make the apportionment itself, or at its discretion to appoint three disinterested assessors for that purpose. It thus appears that while the power to apportion the cost for the construction of a sewer upon the property directly benefited is not claimed to be conferred on the council by direct statement, yet the power is derived, and is vested in the council by the reference made in that portion of the section which provides that such expense or cost shall be assessed in the same manner as is provided in the case of street improvements. It

is conceded that if section 121 is not susceptible of such construction, then the words "may at its discretion." according to all the authorities, will be construed to mean "must."

The point of the city's contention, therefore, is that when a public officer or tribunal is by statute invested with authority to do some act itself which affects individual rights or the public, or in its discretion to appoint some other person to perform the act in its stead, and no constitutional objection intervenes, the rule of interpretation requiring "may" to read "must" can have no application.   Our first inquiry, then, is to ascertain the construction to be given to section 121; and if that be to authorize the council itself to assess the proportionate share of such cost against the property directly benefited thereby, as in the case of street improvements, or in its discretion to appoint three disinterested persons in its stead to estimate such proportionate cost, then our next inquiry is to ascertain if the rule invoked that "may" should read "must" applies to this section.

Under section 121 the council has the power to order sewers or drains to be constructed, and to cause the cost thereof to be assessed on the property directly benefited. Then follows an exception to the effect that the "mode of apportioning estimated cost of street improvements prescribed in sections 112 and 113, chapter X., of this act shall not apply to the construction of sewers or drains." These two last sections limit the boundaries within which the street assessments may be made, and prescribe the method of apportionment of the cost of the improvement of intersections.   After making these exceptions, the section then proceeds to provide that, "when the council shall direct the same," (that is, the cost of constructing such sewers or drains), "such cost shall, in every other respect," (that is, in every respect except as prescribed in sections 112 and 113), "be assessed and collected in the same manner as is provided in the case of street improvements."   The provision that such expense shall be

assessed in the same manner as is provided in the case of street improvements, necessarily makes such sections in regard to street improvements, with the exceptions noted, a part of section 121 for that purpose.   To ascertain, then, how such expense for the construction of sewers or drains shall be assessed, we must turn to those sections.   Section 100 provides the manner of determining the cost of street improvements.   It declares that * * * "the council may proceed to ascertain and determine the probable cost of making such improvement, and assess upon each lot or parcel thereof its proportionate share of such cost."   By this section, it is plain that the council has the power to apportion and assess the cost of street improvements; and as it is made to apply to a part of section 121, the council has the power to apportion and assess the cost of construction of sewers or drains with the exceptions noted.   After making these provisions, then follows the proviso, "that the council may in its discretion appoint three disinterested persons to estimate the proportionate share of the cost of such sewers," etc.; thereby showing, when section 121 is considered as a whole, that the council has the authority to apportion and assess the cost of constructing sewers or drains upon the property directly benefited, or in the exercise of its discretion to appoint three disinterested persons to apportion such cost in its stead.   It will be noted, then, that the case in hand is not one where a public officer or tribunal is empowered, at its discretion, to do something for the benefit of the public or third person,—where the power to exercise its jurisdiction or do the act abides its pleasure,—but a case where the tribunal is empowered to do the act itself, or in its discretion to appoint others to do it.   If section 121 provided that the council has power to construct sewers or drains, and to cause the cost to be assessed on the property directly benefited, and may, at its discretion, appoint three disinterested persons to apportion such costs, there is no doubt in that case that "may" would be construed

"must". In such cases, the language, though permissive in form, is construed to be peremptory, upon the principle that where power is given to a public officer to do an act for a third person, the law requires that it shall be done. This principle finds its illustration in the old case of *Rex* v. *Barlow*, 2 Salk. 609, where the court said: "When a statute directs the doing of a thing for the sake of justice, or the public good, the word 'may' is the same as the word 'shall'; thus 23 Hen. VI. says the sheriff *may* take bail, this is construed he *shall*, for he is compellable to do so." In *Mason* v. *Fearson*, 9 How. 248, the court said: "Whenever it is provided that a corporation or officer 'may' act in a certain way, or it 'shall be lawful' for him to act in a certain way, it may be insisted on as a duty for him to act so, if the matter, as here, is devolved on a public officer, and relates to the public or third persons." And again, "without going more into details, these cases fully sustain the doctrine, that what a public corporation or officer is empowered to do for others, the law holds he ought to do, if it is beneficial to them to have done." This construction is always given to a statute where it is clear the legislature intends to impose a duty, and not simply a privilege or discretionary power. But, as the court said in *Minor* v. *Mechanics' Bank*, 1 Peters, 64, "no general rule can be laid down on the subject further than that the exposition ought to be adopted in this, as in other cases, which carries into effect the true intent and object of the legislature in the enactment."

The intent of section 121, as construed, is to grant power to the council itself to apportion the cost of constructing sewers, or in its discretion to appoint assessors in its stead for that purpose. The intent of the section cannot be carried into effect, but will be defeated in a material part, if the council itself shall be deprived of the power to apportion such cost in order to compel it to appoint three assessors for that purpose. The effect would be to destroy a power granted by statute to the

council, not because it did not act or exercise its jurisdiction, in conseqence of which the public or third persons were inconvenienced or injured, but because the council did not appoint assessors to do it. There is no pretense that the grant of such power to the council to apportion and assess the cost is open to any legal objection, as the same power is granted and exercised in the case of street improvements; but it is claimed to be objectionable to the rule invoked, because such power is not directly conferred upon the council to exercise itself, or conferred upon it to exercise through three commissioners, instead of being conferred as an alternative power, which the council may exercise itself, or, in its discretion, appoint three assessors to exercise in its stead. The object of the rule invoked is to command the officer or public corporation to act, or exercise its jurisdiction, which is effected by construing language that is permissive in form to be in fact peremptory. It is to compel action as a positive duty, when the statute in terms does not purport to make it so. The council has no option or discretion to abstain from the exercise of the power granted; it must do the act of making the apportionment itself, or appoint assessors to do it in its place, so that the power granted must be exercised in one way or the other. In such case, there can be no failure to exercise the power whereby the public or private individuals may be damnified. That can occur only when the exercise of such power is discretionary. If no other means were provided to apportion such cost except through the intervention of assessors, whose appointment depended upon the pleasure or discretion of the council, a case would be presented within the reason of the rule. But this is not such a case, and we do not think the rule invoked has any application.

The judgment is reversed.