Argued 27 June, decided 17 July, rehearing denied 28 August, 1905.

## BARRINGER *v.* LODER.

### 81 Pac. 778.

PROMISSORY NOTE—NOTICE TO PURCHASER—LOST INSTRUMENT.

1. A purchaser of a lost note and mortgage is put on inquiry as to the true ownership by the absence of the instruments, and buys at his peril, unless he may rely absolutely on the record, regardless of his personal knowledge.

TITLE OF PURCHASER OF LOST NEGOTIABLE PAPER.

2. A purchaser of a lost negotiable instrument before maturity takes in subordination to any previous indorsee in good faith.

STATUTES—IMPLIED AMENDMENT.

3. A statute relating to a matter partly covered by an existing statute will not be construed to modify or repeal the earlier law, unless the two are repugnant.

RECORDING ACTS—VALIDITY OF ASSIGNMENT OF NOTE AND MORTGAGE—CONSTRUCTION OF WORD "MAY."

4. Section 5367, B. & C. Comp., enacted in 1889, providing for the release of mortgages by the holders of the notes thereby secured, is not modified or repealed by Sections 5362, 5363, and 5368, or any of them, providing that mortgages "may" be assigned by written instruments, which "shall" be recorded in the public records, and that no mortgage shall be released except by the person appearing by the county records to be the owner thereof, the word "may" in Section 5362 being used permissively and not imperatively.

From Clackamas: THOMAS A. McBRIDE, Judge.

Mortgage foreclosure by Margaret Barringer against John W. Loder and others. The facts appear in the opinion, except that plaintiff was given a judgment against the defendants W. B. & A. M. Hayden on their note and a decree foreclosing the mortgage given to secure its payment, the effect of which was to oblige the Haydens to pay the note twice, it having been supposedly paid to Loder, who claimed to own it, but did not have it in his possession. The Haydens appeal, but Mrs. Barringer did not appeal from that part of the decree subordinating her mortgage to those of Fellows and Miller. AFFIRMED.

For appellants there was a brief over the name of *C. D. & D. C. Latourette*, with an oral argument by *Mr. Charles D. Latourette*.

For respondent there was a brief over the names of *Charles Joseph Schnabel, Grant B Dimick* and *Jacob B. Ofner*, with oral arguments by *Mr. Schnabel* and *Mr. Ofner*.

MR. CHIEF JUSTICE WOLVERTON delivered the opinion.

This is a mortgage foreclosure. A decree having been rendered favorable to plaintiff, the defendants Hayden appeal.

On January 25, 1901, W. B. Hayden purchased for the consideration of $1,600, from William Barringer, certain realty situate in Clackamas County, and a deed was duly executed and delivered. Six hundred dollars of the purchase price was paid down, and for the balance of $1,000 Hayden and his wife executed and delivered to Barringer their joint and several promissory note, payable to his order three years after date, and executed and delivered to Barringer their mortgage upon the premises to secure the payment of such note. This mortgage was recorded February 18 following. About the time of the transfer, Barringer and wife, the latter being the plaintiff herein, who were then living at Rock Springs, Wyoming, had a separation, and by agreement between them, whereby they divided up their property, this note and mortgage were to become the individual property of the wife. The note was accordingly indorsed by the husband, and both instruments transferred and delivered to the wife. Mrs. Barringer testifies that the consideration she gave for the note and mortgage was her interest in a restaurant and in the cash they then had in the bank, amounting to eight or nine hundred dollars. This was amply sufficient to uphold the transfer. These negotiations appear, so far as the record shows, to have been actual and bona fide, and, if the transfer of the documents was sufficient in law, Mrs. Barringer thereby became the owner of them.

In February, about the time the mortgage was recorded, Mrs. Barringer called at the Haydens, in Clackamas County, to get the note and mortgage, and, being advised that they had been sent back to Rock Springs the day previous, she notified them that she was the owner thereof ; that she and

her husband had separated, and that these papers had been turned over to her as her share of the property; and she at the same time insisted that they should pay no one else but her. This circumstance is not denied by Mrs. Hayden, although she was a witness in the case. Mr. Hayden leaves the impression that Mrs. Barringer came to stop the cash payment, but made no specific or particular claim as to the ownership of the note and mortgage, and gave no warning as to whom the money should be paid. He subsequently admits, however, that Mrs. Barringer told him that the note had been indorsed over to her by Barringer, which information he had previous to his payment of the same to Loder. That the Haydens knew, however, the exact relations Mrs. Barringer sustained to the paper, almost from the very beginning, is shown by the correspondence between Mrs. Hayden and Mrs. Barringer, of which Hayden had full knowledge, and the further admissions of Hayden himself. Besides this, there is the physical fact that Hayden paid to Mrs. Barringer the first year's interest by draft through the bank, and whatever payments they subsequently made, intended to be in discharge of the note, were with such knowledge.

In March, 1902, Barringer, through the Commercial Bank at Oregon City, negotiated a sale of the note and mortgage to the defendant Loder for the consideration of $300. That sum was remitted through the bank, less one dollar collection and exchange and $50 paid to C. D. & D. C. Latourette for their services in connection with the negotiations. Barringer claimed that the note and mortgage had been lost, and for that reason was unable to produce and deliver them to Loder. Acting upon this information, Loder testifies, in effect, that he went to the records, and found the title of the mortgage to be in Barringer, there appearing to have been no transfer by him

of the same to any person ; and, believing that Barringer had a legal right to make a proper transfer to him, whereby he would obtain a perfect title, he completed the purchase. In this connection the evidence shows that Loder drew up the form of assignment of the mortgage by Barringer to him, and at the same time prepared an affidavit for Barringer to verify, showing the loss as he claimed ; but that Barringer would not sign the affidavit, and the sale was not readily closed on that account. About this Loder testifies further that, seeing that Barringer had covenanted in the assignment that he was the owner, he concluded to waive the affidavit of loss, and closed up the purchase. The assignment appears of date March 7, 1902, and was recorded on the 18th of the same month. Thereafter, about January 21, 1903, Hayden was induced to make payment of the note in full to Loder, saving one year's interest of $60, being the second to fall due. The matter was considered as to the rightful ownership of the note and mortgage, and Loder agreed to indemnify Hayden to the extent of $100 in case it was determined that the former was not the legal owner. In order to obtain the money with which to pay Loder, the Haydens borrowed $800 of the defendant Elvira D. Fellows, and $200 from Catherine Miller, giving them mortgages upon the premises to secure these amounts. Upon receiving the money, Loder assumed to cancel the Barringer mortgage of record. The circuit court foreclosed these latter mortgages, declaring them to be first liens upon the premises, and subordinating the plaintiff's lien thereto, on the ground that they were acquired without notice of plaintiff's rights.

1. The cardinal question presented here is, who acquired the better title to the note and mortgage in suit, the plaintiff or Loder? If the former, Hayden was not legally justified in making the payment to Loder, and such payment did not operate to discharge the debt, so that the mortgage

remains as a subsisting lien upon the property, although Loder has assumed to cancel it of record. The payment was made by Hayden, as we have seen, with absolute knowledge of Mrs. Barringer's claim and rights in the premises, and the status of the parties concerned is thus far unmistakably ascertained. Loder's advice from Barringer that the note was lost before his purchase was sufficient to put him upon inquiry as to the true ownership of the paper, and he bought at his peril, unless he was not required to look farther than the record to ascertain who appeared there to be the owner. This proposition, we think, will not be denied.

2. Aside from the mortgage consideration, it seems clear that, if a person assumes to purchase lost negotiable paper, and it subsequently transpires that some one else besides the party pretending to sell has acquired title by previous indorsement from the rightful owner, he will not get any title by his purchase, because the vendor would have none to sell, and it would make no difference that he purchased without notice or knowledge of the indorsee's right or title in the premises. The indorsee would incontrovertibly have acquired a better title, and could maintain it as against any effort on the part of the would-be purchaser to show that he obtained his interest bona fide, and without knowledge of the indorsement. If the party assuming to sell has no title to the paper, he cannot transfer any, and the purchaser of lost paper must buy at his peril. Thus is the status of Loder, under the facts, also established, and he cannot strengthen his title behind the shield of a purchaser or owner without notice, because he only purchased such title as Barringer had at the time, unless, as has been observed, he was warranted in relying solely upon the record title.

3. The appellants base the right of Loder to rely upon the record and their right to discharge by payment to him

upon Sections 5362 and 5363 of B. & C. Comp., it being insisted that a mortgage cannot be otherwise assigned or transferred than as by these sections prescribed. The first section provides, in effect, that mortgages may be assigned or transferred by an assignment in writing, executed and acknowledged with the same formalities as deeds and mortgages, etc., and the second that every assignment of a mortgage shall be recorded at full length, and reference shall be made to the book and page containing such assignment upon the margin of the mortgage record. The word " may " where appearing in the former section, it is urged, should be construed as mandatory, and to mean " shall" or " must," thus precluding and invalidating any other form of assignment. These sections were enacted in 1895, with two others, one being Section 5368 of the Code, and the other the emergency clause, which latter shows why the act was adopted : Laws 1895, pp. 55, 56, §§ 62, 63, 64. It was because it had been determined, among other things, by the decisions of this court, that there were no provisions in the statute for the recording of assignments of mortgages. Section 5368 of the Code provides that no mortgage upon real estate shall be satisfied or released so as to free the property from the lien of the mortgage except by the person appearing upon the records to be the owner thereof, and that a satisfaction or release of such mortgage by a party so appearing to be the owner or holder should operate to free the property of the lien so far as it affects subsequent purchasers and indorsees for value, without notice. Prior to the enactment of this statute there existed another, being Section 5367, B. & C. Comp., adopted in 1889 (Laws 1889, p. 38, §§ 1, 2, 3), which provides, in effect, that whenever a promissory note secured by a mortgage on real property shall be transferred by indorsement, without formal assignment, and such mortgage shall have been duly recorded, the same, upon

payment of the note, may be discharged of record by the owner or holder of the note making and filing with the recorder or county clerk, as the case may be, a certificate, duly verified by his oath, declaring, in substance, that he is the owner and holder of the note secured by the mortgage by indorsement, and that said note has been fully paid, and by proving the fact to the satisfaction of the recorder or clerk and delivering the note to that officer. Further provision is made for recording the certificate and note and making a notation thereof upon the recorded mortgage, which entry, it is declared, shall have the effect of a deed of release of the mortgage. The act of 1895 makes no express repeal of this statute, and it must remain operative, unless the provisions of the former are repugnant thereto; but we take it that there was no design to repeal it, and this is evidenced by the use of the word "may" in Section 5362, and the emergency clause to which attention has been called.

4. When these statutes were enacted, an indorsement of a note had been long recognized as carrying with it the mortgage given to secure its payment, as the latter was regarded but an incident to the debt: *Roberts* v. *Sutherlin*, 4 Or. 219; *Bamberger* v. *Geiser*, 24 Or. 204 (33 Pac. 609). The act of 1889 is in express recognition of this manner of assignment, and it provides an appropriate method of satisfying the mortgage of record by the assignee or indorsee of the note. When the legislature came to the enactment of the subsequent statute, it very properly used the word "may" with reference to an assignment by separate writing, still recognizing the right, as it had formerly done, to assign by indorsement of the note. When it comes to the manner of recording the assignment, the word "shall" is used. Why use the word "may" in one section and "shall" in the succeeding one? The relationship in-

dicates an intendment that there should be a distinction in their application in practice, and this is reënforced by the legislative declaration that the act of 1895 was adopted because there existed no statute for the recording of assignments of mortgages. Assignments in the method designated then could be made before the statute as well as by assignment of the note, and the act simply prescribes that this may still be done by that method, but that such assignments shall be recorded in the manner pointed out. This construction is in harmony with the settled rule. The intention of the legislature is manifest, and the words should be given their ordinary acceptation and meaning. Say the learned authors of the American and English Encyclopædia of Law (2 ed., vol. 20, p. 237): "In a statute the word 'may' can be construed in a mandatory sense only where such construction is necessary to give effect to the clear policy and intention of the legislature ; and where there is nothing in connection with the language nor in the sense or policy of the provision to require an unusual interpretation, its use is merely permissive and discretionary." The text is supported by numerous authorities, and the principle has been recognized by this court: *King Real Estate Assoc.* v. *Portland*, 23 Or. 199 (31 Pac. 482). It is clear, therefore, that Loder acquired no title by virtue of his assignment from Barringer, and that Hayden's payment to him was not effective to discharge the obligation as against Mrs. Barringer.

These considerations affirm the decree of the circuit court, and it is so ordered.          AFFIRMED.