Argued March 6, decided April 2, 1912.

## ROGERS v. CITY OF SALEM.

[122 Pac. 308.]

MUNICIPAL CORPORATIONS—PUBLIC IMPROVEMENTS—CONSTRUCTION OF SEWERS—STATUTORY PROVISIONS.

1. The provisions in a city charter that the expense for the construction of sewers shall be assessed and collected as provided in the case of street improvements, except as otherwise specially provided, make the provisions governing the assessment and collection of the cost of street improvements applicable to the assessment and collection of the cost of the construction of sewers, except as otherwise specially provided.

MUNICIPAL CORPORATIONS—CONSTRUCTION OF SEWERS—ASSESSMENTS.

2. The power conferred by a city charter to assess the cost of the construction of a sewer system on the property directly benefited implies the authority to define the area to be drained.

MUNICIPAL CORPORATIONS—CONSTRUCTION OF SEWERS—ASSESSMENT—AREA—NOTICE.

3. The construction of a sewer by a city, the charter of which empowers the council to authorize the construction of sewers when deemed necessary, is an exercise of the police power for the health and cleanliness of the city, and the determination of the district to be taxed for the system, is within legislative discretion, and the council in adopting plans and specifi-

Sig. 11

cations, and prescribing the limits of the area to be drained by a sewer, need not give notice to the taxpayers.

MUNICIPAL CORPORATIONS—CONSTRUCTION OF SEWERS—NOTICE TO TAX PAYERS.

4. A city charter authorizing the council to construct sewers when deemed expedient on giving 10 days' notice by publication in a daily newspaper specifying the sewer to be constructed, requires the giving of notice to the taxpayers before an assessment for the construction of a sewer can be sustained, but compliance with the charter as to the time and manner of giving notice is sufficient to confer on the council jurisdiction to act.

MUNICIPAL CORPORATIONS—CONSTRUCTION OF SEWERS—NOTICE TO TAX-PAYERS.

5. A notice that the council of a city deems it' expedient and proposes to construct at the expense of property within the limits of a district a sewer system according to specifications on file at the office of the city recorder, etc., sufficiently apprises the parties interested that the council proposes to construct a sewer system at the expense of property owners within the limits of the district as disclosed by plans on file in a public office, and the property to be assessed is sufficiently described, so as to obviate the necessity of a description of such property in a notice, not required by the charter, of the levying of the assessment on the property benefited.

MUNICIPAL CORPORATIONS—CONSTRUCTION OF SEWERS—ASSESSMENTS—VALIDITY.

6. A city charter authorizing the construction of a sewer on giving a specified notice and authorizing an assessment of the probable cost of the improvement, and for an assessment of a deficit, when the original assessment is insufficient, does not require any additional notice of a deficit assessment, which is but a completion of the original assessment, and the only notice required is that provided in the charter for the collection of the assessment.

MUNICIPAL CORPORATIONS—CONSTRUCTION OF SEWERS—ASSESSMENT—VALIDITY.

7. A deficit assessment authorized by a city charter in case an original assessment is insufficient is not premature where the contract for the improvement has been let and the total cost ascertained, though the work has not been completed.

MUNICIPAL CORPORATIONS—ASSESSMENTS FOR PUBLIC IMPROVEMENTS—OBJECTIONS.

8. A general objection that an assessment for the construction of a sewer is not made according to benefit is insufficient where the owners do not allege that their property may not be drained by the sewer, but merely claim that their lands will not be benefited thereby, and that part of the lands are already drained by sewers constructed through the city by the state.

MUNICIPAL CORPORATIONS—CONSTRUCTION OF SEWERS—DETERMINATION OF COUNCIL.

9. The necessity and propriety of constructing a sewer at the cost of property benefited is for the exclusive determination of the council

authorized by the city charter to provide for the construction of sewers when it deems the same expedient, except in the case of fraud.

MUNICIPAL CORPORATIONS — PUBLIC IMPROVEMENTS — ASSESSMENTS — OBJECTIONS.

10. Where the notice required by the charter of a city authorizing the construction of sewers at the cost of property benefited on the giving of a specified notice has been given, persons interested must make their objections to the council and specify the reason why their property will not be benefited by the sewer, or wherein an assessment will be unjust, and, on a failure of the council to give a proper hearing, its action may be reviewed and thereby afford adequate remedy to such persons, and where no objections are made until after an ordinance providing for the construction and the apportionment of the expense is passed, and the contract for the construction let and the work partially performed, irregularities in the proceedings after the acquisition by the council of jurisdiction cannot be considered in a suit to avoid the entire assessment.

MUNICIPAL CORPORATIONS — PUBLIC IMPROVEMENTS — ASSESSMENTS — OBJECTIONS.

11. Where property owners have had notice and an opportunity to be heard in regard to an assessment for a public improvement, equity will not grant relief against the assessment as unequal; the owners failing to appear to object at the proper time.

MUNICIPAL CORPORATIONS — PUBLIC IMPROVEMENTS — ASSESSMENTS — VALIDITY.

12. An ordinance levying an assessment for the cost of a sewer system which makes an assessment on property alleged to be benefited, and which recites that such property is drained by the sewer, sufficiently shows that the property is directly benefited within the city charter authorizing assessments on property directly benefited.

MUNICIPAL CORPORATIONS — PUBLIC IMPROVEMENTS — ASSESSMENTS — VALIDITY.

13. An assessment according to superficial area for the cost of a sewer system is not necessarily void as not made under the rule requiring assessment to be in proportion to benefits.

MUNICIPAL CORPORATIONS—PUBLIC IMPROVEMENTS—ASSESSMENTS.

14. Where land is assessed for the construction of a sewer conferring a benefit on it, the assessment is not void merely because the city water mains are not extended along the streets on which the land to be assessed is situated.

MUNICIPAL CORPORATIONS — PUBLIC IMPROVEMENTS — ASSESSMENTS — VALIDITY.

15. Where land assessed for a sewer system could be drained by the system, and it did not appear that the land was not enhanced in value to the full amount of the assessment, the assessment was valid as levied on land directly benefited by the system, and the court in a suit to enjoin the collection of the assessment would not assume that the municipal authorities did not take all the facts into consideration in making apportionment of the cost.

MUNICIPAL CORPORATIONS — PUBLIC IMPROVEMENTS — ASSESSMENTS — VALIDITY.

16. Where land assessed for a sewer system had a right to connect with the system when completed, and the ordinance for the construction of the system purported to provide a system of drainage for the land assessed, the assessment was not void because the ordinance did not provide that the owners of the land could connect with the sewer.

MUNICIPAL CORPORATIONS — PUBLIC IMPROVEMENTS — ASSESSMENT OF BENEFITS.

17. Nonabutting land may be benefited by the construction of a sewer and assessed for benefits.

MUNICIPAL CORPORATIONS—PUBLIC IMPROVEMENTS—ASSESSMENTS FOR BENEFITS—AGRICULTURAL LANDS.

18. Property devoted to agricultural purposes is subject to special assessment for special benefits for the cost of a sewer.

MUNICIPAL CORPORATIONS—PUBLIC IMPROVEMENTS—SPECIAL ASSESSMENTS—VALIDITY.

19. Land drained by an existing sewer constructed by the state may not be assessed for the construction of a new sewer, where no benefits to the land are derived therefrom.

From Marion: WILLIAM GALLOWAY, Judge.

Statement by MR. JUSTICE BEAN.

This is a suit by Dr. E. F. Rogers, Paul F. Minzenneir, Etta Cothran, J. R. Neer, Mrs. M. F. Casto, Caroline Morton and Nellie G. Morton, C. A. Gregson, Cecilia Knapp, Martin Murphy, Linda E. Cotterman, Sarah I. Emerick, Gustav Keuscher, A. W. Korb, L. Iler, Mrs. G. M. Salisburg, Mary C. Bumgardner, I. Bumgardner, F. Neer, D. K. Luthy, George H. Stoddard, George Smith, E. N. Abbott, L. D. Dennison, W. A. Knapp, S. I. Desart, Harrison Doe, Marie A. Smith, J. L. Freeland, and all other persons who may desire to interplead herein. A. Gregson, E. N. Morris, I. A. Morris, J. F. McDonald, Sarah E. Taylor, M. McDonald, Ed. C. Roberts, Joseph M. Wirth, Wm. McLew, Maude B. Cox, W. W. Walker, M. T. Fane, S. P. Hale, E. J. R. Hale, M. M. Huffman, J. P. Jones, Isabel Eberhardt, G. W. Poyser and S. E. Poyser, against the City of Salem, to enjoin the collection or an original assessment and a subsequent deficit for the

construction of a sewer in the city of Salem, Oregon. The trial court rendered a decree sustaining the original assessment and restraining the collection of the deficit assessment over and above the amount of the estimated cost. Both parties appeal therefrom. On June 6, 1910, council for the city of Salem adopted and filed in the office of the city recorder plans and specifications for the installation of certain sewers in the district comprising that portion of the city north of Mill Creek not already provided with sewerage. By direction of the council, the recorder published for 10 days in a Salem daily newspaper of general circulation, a notice, the substance of which reads as follows:

"Notice of Intention to Construct a Sewerage System for North Salem.

"Notice is hereby given that the common council deems it expedient and proposes to construct and establish at the expense of the property owners within the limits of said district a sewer system, to be known as the North Salem sewer, according to the plans and specifications adopted for such sewer, and on file at the office of the city recorder, the boundaries of which are more particularly mentioned and described in said plans and specifications which are hereby referred to the same as if fully written herein, and on file at the office of the city recorder. * *"

After the expiration of 20 days, from the publication of such notice, there being no objections to the improvements filed, the council directed a second notice to be published in a like manner for three days, the contents of which are as follows:

"Notice of Assessment; North Salem Sewer.

"Notice is hereby given that the common council, will at or about 8 o'clock p. m. on Monday the 25th day of July, 1910, at the common council chambers at Salem, Oregon, proceed to assess upon each lot or parcel of land liable therefor its proportionate share of the costs of the North Salem sewer, according to the

maps, plans and specifications adopted for such sewer by
the council, and on file at the office of the city recorder,
reference to which is hereby made for a more perfect
description thereof. All persons interested in said
assessment shall appear at said time before said council
and present objections if any they have to said assess-
ment. Done by order of the common council of the
city of Salem, Oregon, this 18th day of July, 1910.

                              W. A. Moores,
                                   City Recorder."

On July 25, 1910, no objections having been filed,
Ordinance 834 was passed, directing that the work be
performed according to the plans and specifications
adopted, levying an assessment upon the lots and parcels
of land benefited, and making an apportionment of the
benefits to be paid by the several tracts of land affected.
After advertising for bids one was finally filed and
accepted in the sum of $87,952.40, and a contract entered
into for the construction of the sewer. This bid was
based upon the engineer's estimate of quantities. The
contract and specifications required that the contractor
should be paid only for the actual amount of work per-
formed and material used in constructing the sewer.
The difference between the engineer's preliminary esti-
mate of the probable cost as first determined by the
council, and the final estimate after the contract was
awarded, created a deficit in the amout of $28,054.67.
On December 19, 1910, the council passed an ordinance
providing for an assessment of the latter amount on
the property benefited, in addition to the original assess-
ment, and declaring the same to be a lien upon each
lot or parcel of land thereof according to the deficit
assessment roll, and directing the city recorder to enter
a statement thereof in the docket of city liens as a
deficit assessment. As the reasons why such assess-
ment should not be collected, the plaintiffs allege the
following:

"That in their attempt to pass said ordinance the city council of said defendant city of Salem, Oregon, failed and neglected to examine into and determine by their said ordinance or otherwise that the respective lots or parcels of land belonging to each of the respective owners within the sewer and assessment district attempted to be established by said ordinance, and particularly the lands of these plaintiffs and interveners were or are directly benefited by said drain or sewer in the amount of the special tax attempted to be levied against each of said respective tracts, and failed to direct the same to be assessed on the property directly benefited, and said defendant willfully, arbitrarily, and intentionally omitted and refused to assess each of the lots or parcels of land belonging to these plaintiffs and interveners in proportion to the direct benefits thereto, and willfully, arbitrarily, and intentionally assessed each and all of the respective lots and parcels of land within said pretended sewer district attempted to be established by said ordinance, in proportion to the superficial area of each, and without any reference to the direct benefits derived from said sewer to each of said lots or parcels of land. That said assessment for the construction of said sewer was not and is not in and by said ordinace levied in proportion to the cost thereof upon the or any property which is or may be directly benefited by the construction of said sewer, and the respective lots and parcels of land of said plaintiffs and interveners herein and each of them are not and will not be directly benefited by said drain or sewer in the amount of the respective tax assessments against them, or any other sum or amount, and by reason of the foregoing facts said city council has exceeded its authority in said attempted assessment, and said ordinance is void and of no effect, except that the same constitutes and is a cloud upon the title of the respective lots and parcels of land belonging to each of said respective plaintiffs and interveners herein."

It is also alleged that Dr. E. F. Rogers, W. W. Walker, J. F. McDonald, and Harrison Doe already have their property amply drained by connection with certain sewers constructed through the city by the State of

Oregon, pursuant to an agreement between the city of Salem and the State. A particular description of the land belonging to each of the respective plaintiffs and interveners, who will hereinafter be called plaintiffs for the sake of brevity, with the amount of assessment against each tract, is set forth in an exhibit attached to the complaint. By supplemental complaint the plaintiffs allege the passage of Ordinance 877, and aver:

"That no notice was given or attempted to be given by said defendant to the plaintiffs or interveners herein, or to any of the persons owning property within said attempted sewer district of the or any intention to pass said or any ordinance increasing the amount of money to be raised for the construction of said North Salem sewer."

The plaintiffs further assert that said ordinance is void, and constitutes a cloud upon the title of their property.

The defendant, by its answer, denies the gist of the complaint, and sets out the proceedings taken by the common council of the city of Salem in adopting the plans and specifications and publication of the notice of the proposed sewer, the passage of the ordinances referred to, providing for the construction of the sewer, and assessing the cost thereof upon the property in such sewer district. The city alleges that no remonstrance or objection to the construction of the sewer was made or filed, and "that the property and premises of each of the plaintiffs in this suit is situated within the boundaries and limits of said sewerage district, and will be and is directly benefited by the construction of said sewer system, to the full amount of the cost of the construction thereof, assessed against the property and premises of said plaintiffs. * *" The defendant further alleges the advertising for bids and the letting of the contract for the construction of the sewer according to the plans and specifications.

The plaintiffs' reply puts in issue the affirmative matter contained in the answer.

MODIFIED.

For appellant there was a brief over the names of *Mr. Grant Corby, Mr. John H. McNary* and *Mr. Rollin K. Page,* with oral arguments by *Mr. Corby* and *Mr. McNary.*

For respondents there was a brief with oral arguments by *Mr. Myron E. Pogue* and *Mr. Woodson T. Slater.*

MR. JUSTICE BEAN delivered the opinion of the court.

The authority of the common council of the city of Salem in the matter of the construction of sewers is conferred by the city charter. Section 25 provides that:

"The city council shall have power and is authorized, whenever it deems it expedient, to improve the public grounds within said city, * * to establish or alter the grade and improve any street, * * and to lay down all necessary sewers and drains. * *"

The provisions for notice of improvement are as follows:

Section 26: "No grade or improvement mentioned in Section 25, except the original establishing of a grade, can be undertaken or made without ten days' notice thereof being first given by publication in some daily newspaper published in the city of Salem."

Section 27: "Such notice must be given by the recorder, by order of the council, and must specify with convenient certainty the sewer or street, or part thereof, proposed to be improved, or of which the grade is proposed to be established or altered, and the kind of improvement which is proposed to be made."

Section 31: "In case the notice be for the improvement of a street or part thereof, the council may proceed to ascertain and determine the probable cost of making such improvement, and assess upon each lot or part thereof liable therefor its proportionate share of such costs, * *"

Section 32 provides that when the probable cost of the improvement has been ascertained, and the proportionate share assessed as provided by section 31, the council must declare the same by ordinance.

Sections 33 and 34 describe the docket of city liens.

The provisions of section 35 are to the following effect: "A sum of money assessed for the improvement of streets cannot be collected until by order of the council ten days' notice thereof is given by the recorder. * *" This section specifies the manner of notice, and that such notice shall substantially contain the matters required to be entered in the docket of city liens concerning such assessment.

And section 43 provides that the proposed street improvement shall be assessed to the owners of property abutting on the street.

Section 44 directs how the cost of improving the intersections of streets shall be assessed.

In section 48 the following is provided:

"If upon the completion of any improvement it is found the sums assessed therefor upon any lot or part thereof is not sufficient to defray the cost thereof, the council must ascertain the deficit and declare the same by ordinance; when so declared, the recorder must enter the sum of the deficit in the docket of city liens, in a column reserved for that purpose in the original entry, with the date thereof, and such deficit shall thereafter be a lien upon such lot or part thereof, in like manner and with like effect as in the case of the sum originally assessed, and shall also be payable and may be collected in like manner with like effect as in the case of such sum so assessed."

The provisions of section 52, relating to sewers and drains, are as follows:

"The council shall have the power to lay down all necessary sewers and drains, and cause the same to be assessed on the property directly benefited by such drain or sewer, but the mode of apportioning estimated costs

of improvement of streets prescribed in sections 43 and 44 of this act shall not apply to the construction of such sewers and drains; and when the council shall direct the same to be assessed on the property directly benefited, such expense shall in every other respect be assessed and collected in the same manner, as is provided in the case of street improvements; provided, that the council may at its discretion appoint three disinterested persons to estimate the proportionate share of the cost of such sewer or drain to be assessed to the several owners of the property benefited thereby. * *"

An examination of the above allegations of the complaint discloses that. Ordinance 834, providing for the construction of a sewer, is assailed for the reason that the assessment was made in proportion to the superficial area of the property, and without reference to the direct benefits derived, and that said property will not be directly benefited by the sewer. The sufficiency of the notice of intention to construct the sewer at the expense of the property owners, published June 7, 1910, is not challenged by the complaint. Plaintiffs by their supplemental complaint, however, allege that no notice was given of any intention to pass Ordinance 877, declaring and assessing the amount of the deficit in the cost of the sewer. We will first take up the question of notice in the order presented by the argument. As already noted, sections 25 and 52 of the charter of the city of Salem both provide that the city council shall have power to construct sewers; and section 26 provides 10 days' notice thereof by publication.

1. It will also be noticed that section 52, especially referring to sewers, provides, except as prescribed in sections 43 and 44 of this act, that, when the council shall direct the expense of a sewer to be assessed upon the property directly benefited, such expense shall in every other respect be assessed and collected in the same manner as provided in the case of street improvements.

This necessarily makes such sections in regard to street improvements, with the exceptions noted, a part of section 52 for that purpose. *King Real Estate Association* v. *Portland,* 23 Or. 199 (31 Pac. 482). These provisions of the charter clearly require the same notice to be given before constructing a sewer as before improving a street. As stated, it is not asserted by plaintiffs that the provisions of section 26 were not complied with. However, prior to the passage of Ordinance 877 making an assessment for the deficit, the council, by resolution, caused the city recorder to publish the second notice above set forth. Before the publication of the first notice, detailed specifications and plans or maps were adopted and filed in the office of the city recorder, showing the boundaries of this sewer system or district, the streets upon which the sewer mains were proposed to be constructed, the size of the pipe, the property proposed to be drained, and other details.

2. The power conferred by the charter to assess the cost of sewer upon the property directly benefited necessarily implies the authority to define the area to be drained. That which is implied in a statute is as much a part thereof as what is expressed. *Minard* v. *Douglas County,* 9 Or. 206.

3. In adopting these plans or maps and specifications, and prescribing the limits of the area to be drained by the sewer, no notice thereof to the taxpayers was necessary. *Paulson* v. *City of Portland,* 16 Or. 450 (19 Pac. 450: 1 L. R. A. 673: 149 U. S. 30, 40: 13 Sup. Ct. 750: 37 L. Ed. 637). The construction of a sewer by a city is the exercise of the police power for the health and cleanliness of the municipality, and such power is exercised solely at the legislative will. The determination of a territorial district to be taxed for a local improvement is within the province of legislative discretion. *Paulson* v. *City of Portland,* 16 Or. 450 (19 Pac. 450: 1

L. R. A. 673: 149 U. S. 30, 40: 13 Sup. Ct. 750: 37 L. Ed. 637), citing *Willard* v. *Presbury,* 14 Wall. 676 (20 L. Ed. 719) ; *Spencer* v. *Merchant,* 125 U. S. 345, 355 (8 Sup. Ct. 921: 31 L. Ed. 763).

4. Under this charter, notice must be given to the taxpayers, before an assessment for the construction of a sewer can be sustained, as in any other demand upon the individual for a portion of his property. *Paulson* v. *City of Portland,* 61 Or. 450 (19 Pac. 450: 1 L. R. A. 673: 149 U. S. 30, 40: 13 Sup. Ct. 750: 37 L. Ed. 637). Where the charter of a city granting the power to construct sewers expresses the time and manner of giving notice thereof, compliance with such statute is sufficient to confer upon the council jurisdiction to act in the matter. The mode of exercising the authority is the measure of power. 2 Elliott, Roads and Streets, § § 665, 699, and 700. We quote from the latter part of section 699 as follows:

"The only defensible rule is that which requires that as some stage of the proceedings before the judgment or decision becomes conclusive the land owners should have notice and an opportunity to be heard. We do not say that he is entitled to be heard on every question, but we do believe that before the final determination, he is entitled to be heard upon questions which vitally touch the validity of the proceedings. What we mean is that upon such questions he cannot be denied the right to a hearing which the organic law intends to secure to every citizen before his property rights are actually and materially affected. * *"

In section 700 we find the following language as to the sufficiency of the notice:

"* * The nature of the notice and hearing may be determined and prescribed by the legislature, so long at least as no constitutional limitations or rights are violated. The statute on the subject must be complied with and any failure to give the statutory notice and hearing will usually invalidate the assessment. Where

the statute does not prescribe any particular form or time of notice, the notice should be reasonable and given for a reasonable time, and if the time is reasonable and the notice apprises the interested parties of the location and nature of the improvement and property to be assessed, and, when required, the time and place for hearing it will usually be sufficient. Where the statute is specific it has been held that no restrictions or limitations can be added by the municipality; and it has also been held that an agreement by city officials that they would give notice of future proceedings does not bind the city so as to require it to give notice in addition to that provided for by statute. In some instances, however, ordinances may provide for a certain notice. * *"

It will be seen that section 26 prescribes the time and manner of notice, and section 27 directs that the notice must specify with convenient certainty the sewer or street proposed to be improved and the kind of improvement to be made. The form of the notice is not prescribed therein, nor is the time and place for hearing required to be inserted. From the charter we find that no notice of ascertaining and declaring the amount of the assessment is required after giving the notice as a prerequisite to the construction of the sewer. While the notice of making the assessment and commanding all interested parties to appear before the council and present their objections, if any, was published for three days in a newspaper, there was no requirements that such action should be taken. This second notice was in addition to that mentioned in the charter, and was in the nature of an extension of time or superfluous. The question remains: Was the notice of June 7th sufficient? Although this question is only raised indirectly by the averment in the complaint as to the want of notice of a passage of Ordinance 877, the point contended for by plaintiffs' counsel in their argument and brief is that the second notice contains no description of the property to be assessed.

5. The first notice, however, sufficiently apprises the interested parties that the council proposes to construct and establish a sewer system at the expense of the property owners within the limits of such district according to the plans and specifications adopted, in which the boundaries of the district are more particularly described, and plainly referred to in the notice. We think this was a sufficient description of the property to be assessed. In the case of *Clinton* v. *City of Portland,* 26 Or. 410 (38 Pac. 407), it was claimed that, the city charter having provided that the notice must specify with convenient certainty the kind of improvements to be made, no reference could be had to any plans or specifications to aid such notice. Mr. Justice MOORE, speaking for the court, at page 416 of 26 Or. (at page 409 of 38 Pac.) said: "* * Where an ordinance or notice, after describing generally the kind of improvement proposed to be made, refers for a specific description to maps, plans, specifications or other details of such improvement on file in a public office, and accessible to interested parties, they thereby became a part of such ordinance or notice, render the description complete, and comply with the statutory requirements"— citing Beach, Public Corporations, § 1182; *Stone* v. *Cambridge,* 6 Cush. (Mass.) 270; *Ladd* v. *Spencer,* 23 Or. 193 (31 Pac. 474); *Becker* v. *City of Washington,* 94 Mo. 375 (17 S. W. 291). The plans and maps of the sewer system in question were accessible to the taxpayers, and furnished information as to the lines of the sewer district; the boundaries being marked and explained on the map thus: "| | | | | | |." This description of the property proposed to be taxed rendered the notice complete in such respect. *Rubin* v. *City of Salem,* 58 Or. 91 (112 Pac. 713). The provision contained in the charter and the notice given by the city, pursuant thereto, afforded a reasonable opportunity for

the interested parties to make and file objections to the passage of the ordinance, and to have the same heard by the council.

6. Section 32 of the charter makes provisions for an assessment of the probable cost of the improvement, and section 48 provides for the assessment of a deficit when the original sums assessed therefor are found to be insufficient to defray the cost thereof. No additional notice of such deficit assessment is required by the charter. This is but a completion of the original assessment, and no further notice to the taxpayers is necessary until that provided for in section 35.

7. While it is claimed that this apportionment was prematurely made, yet the contract had been let and the total cost ascertained, and it does not appear that there is any error in the amount, although the work had not then been completed. The deficit assessment made by Ordinance 877 is based upon the same foundation as the original assessment, and it must stand or fall therewith.

8. We come now to the important question of making the assessment for the expense of the sewer upon the property directly benefited. Plaintiffs allege that the council neglected to determine by Ordinance 834 that their respective lots or parcels of land in the district were "directly benefited" by the sewer or drain, and failed to assess the same according to, or in proportion to, the direct benefits, but arbitrarily assessed the land in proportion to the superficial area. In the case of *Beckett* v. *City of Portland,* 53 Or. 169 (99 Pac. 659), the complaint was on the ground that the plaintiffs' property would not be benefited by the sewer on account of the situation of the land, and the necessity of making deep tunnels below the surface of the ground through a watershed at an increased cost. It was held in sustaining a demurrer to the complaint that under

the charter of the city of Portland the action of the council in establishing a sewer district, finding that the property situated therein would be specially benefited by the construction of the sewer, and ascertaining the amount of such benefit, and making an assessment therefor, was conclusive on the courts in a collateral attack, unless the act of the municipal body were so unreasonable, oppressive, and subversive of the rights of the citizen as to indicate an abuse rather than a legitimate exercise of the power—citing many authorities. Mr. Justice BEAN, speaking for the court, states the general rule at page 173 of 53 Or. (at page 660 of 99 Pac.), as follows: "* * Where a municipality has authority to establish assessment districts and assess the cost of constructing sewers on property therein, it is not essential to the validity of an assessment that the property shall abut upon the street or place where the sewer is laid. The question of benefits is one of fact, and, if it be determined by the proper tribunal that the property is specially benefited by the construction of the sewer, as assessment is proper to the extent of such benefit, whether the property is abutting or contiguous to the improvement or not." Many authorities are cited. In the case at bar the claim is similar to the one in the Beckett case. The plaintiffs do not allege that their property cannot be drained into the North Salem sewer, but they base their claim on the general assertion that their lands will not be benefited thereby, and with the additional averment that some of their number already have their property connected with, and amply drained by, certain sewer construction through the city by the State of Oregon. A general objection that such an assessment is not made according to benefits is insufficient. *Hughes* v. *City of Portland,* 53 Or. 370, 391 (100 Pac. 942).

9. The necessity and propriety of laying this sewer,

except in the case of fraud or want of authority, was a question for the exclusive determination of the common council. *Applegate* v. *City of Portland*, 53 Or. 552 (99 Pac. 890).

10. It was incumbent upon the parties interested to have acted promptly, making their objections to the council and specifying the reason why their property would not be benefited by the sewer, or wherein the assessment would be unjust and oppressive, and, then, if the council had failed to give a proper hearing, their action could have been reviewed. This remedy was adequate. *Hughes* v. *City of Portland*, 53 Or. 380 (100 Pac. 942) ;*Michell* v. *City of Portland*, 53 Or. 548 (99 Pac. 881: 101 Pac. 388).

No objections having been made to the improvement in question, until after the ordinance providing for. the construction of the sewer and the apportionment of the expense was passed, and the contract for the construction let, and the work partially performed, any irregularities occurring in the proceedings for such an improvement after the common council had acquired jurisdiction should not be considered in a suit to avoid the entire assessment. *Clinton* v. *Portland,* at page 419 of 26 Or. (38 Pac. 407) ; *Houck* v. *City of Roseburg,* 56 Or. 238 (108 Pac. 186).

11. In such a case, where the property owners have had notice and an opportunity to be heard in regard to an assessment for a public improvement, a court of equity will not grant relief against such assessment as unequal, where they, failed to appear and make their objection at the proper time. *Wilson* v. *Salem,* 24 Or. 504 (34 Pac. 9, 691).

12. It is contended by counsel for plaintiffs that Ordinance 834 did not assess the estimated cost of the sewer upon the property "directly benefited" as required by the charter, but merely made the assessment upon the

property "benefited." While the ordinance does not contain the word "directly" in this connection, it recites that the land assessed is drained by the sewer which shows that it is directly benefited.

13. It is objected that the assessment was made according to the superficial area. An assessment made according to the area is generally regarded as a just means of apportioning the special benefits, particularly in the case of sewers, and is upheld in a proper case upon the same principle that upholds frontage assessments. 2 Elliott, Roads and Streets, § 688. An assessment under the rule of benefits is not necessarily vitiated by an assessment according to area or frontage. Hamilton, Special Assessments, § 481. "A finding by the equalizing board that the lots affected 'are specially benefited, and shall be assessed for the full cost of construction of such sewers according to their foot frontage,' although informal, does not invalidate the assessment, as the finding that the property is especially benefited, and should be assessed as stated, is tantamount to a statement that the benefits are equal and uniform." Hamiltion, Special Assessments, § 605.

14. Passing to the merits of the controversy as shown by the evidence in the case, it is contended that this sewer system is not beneficial for the reason that the water mains have not yet been extended to that portion of the city. The fact that the land will not receive as great a benefit from the sewer as it would if the mains of the city waterworks were extended along the streets upon which the land to be assessed is situated does not prevent an assessment for such improvements, if it, in fact, does confer a benefit. 1 Page and Jones, Taxation by Assessment, § 324.

15. The action of the council in defining the lines of the sewer system was, in effect, a determination of what property would be directly benefited by the sewer. It

is not intended to suggest that the city could arbitrarily, or in any manner, include in such system property which would not in fact be so benefited, or make a levy substantially in excess of such benefits. *Kadderly* v. *Portland*, 44 Or. 118, 155 (74 Pac. 710: 75 Pac. 222); *Strout* v. *City of Portland*, 26 Or. 294 (38 Pac. 126). The evidence shows that all the land embraced within these limits can be drained by this system. It does not appear from the evidence that these tracts are not enhanced in value to the full amount of the tax, or that the assessment is unjust or oppressive. It will not be assumed, nor is it shown, that the city council did not have full knowledge of the topography and value of the land, and all the circumstances touching the matter of benefits, or did not take the same into consideration in making the apportionment of the expense of the sewer.

16. Objection is made that the expense was incurred for main or trunk sewers, and that the ordinance does not provide that the plaintiffs shall have a right to attach to the sewer. We think this claim is without foundation. The whole purport of the ordinance is to construct a sewer system to drain the property of plaintiffs in this district, and for that purpose branch sewer connections were put in at various street intersections and other places into wihich lateral sewers could be discharged. 4 Dillon, Municipal Corporations, § 1460. When the system is completed, there can be no doubt but that the owners of the realty which has been assessed to pay for the system will have a right to attach thereto. 1 Page and Jones, Taxation by Assessment, § 563; *Snydacker* v. *Village of West Hammond*, 225 Ill. 154 (80 N. E. 93).

17. Under some statutes, the cost of a main or trunk sewer which is intended to connect with lateral sewers and thus drain a wide area must be assessed upon all the property drained by the laterals. Page and Jones,

Taxation by Assessment, §§ 327, 563. See, also, *South Highland Land & Improvement Co.* v. *Kansas City,* 172 Mo. 523 (72 S. W. 944). In order to receive a benefit from a public improvement, land need not abut or front thereon, in the absence of a determination by the legislature or under authority of the statute that only the abutting or fronting property is benefited. Accordingly nonabutting land may be benefited by the construction of a sewer. Page and Jones, Taxation by Assessment, § § 619, 620. In *Rich* v. *City of Chicago,* 152 Ill. 18 (38 N. E. 255), it was held that in a special assessment for a sewer it is not essential that the property assessed be contiguous or abutting upon the improvement, if it is presently and specially benefited. Evidence that the market value of the property will be increased in consequence of the improvement is sufficient to establish special benefit. 4 Dillon, Municipal Corporations, § 1460.

18. It is complained that a portion of the property taxed is unplatted acreage tracts. Mr. Elliott in his work on Roads and Streets, § 672, announces the rule that property devoted to agricultural purposes, unless exempted by constitution or statute, is subject to special assessment for special benefit. And a statute providing for an assessment of each and every lot has been held to include a tract of unplatted land. Several of the plaintiffs and their witnesses, other than those who stated that their property was connected with a sewer, testified much to the same effect as the following, given by one of the plaintiffs, Mr. George H Stoddard. The latter, after stating the number of acres he owned, its location and the amount of his assessment, to the question:

"What is the fact, Mr. Stoddard, about your property being benefited as much as the amount of assessment against it by this new sewer?" answered: "I am unable to detect it will be any benefit to me at all whatever." And to the question, "Why?" he answered: "Well, for the reason, in the first place, they haven't

any water there. In the second place, the benefits, the cost of making this improvement, is much in excess of the benefit to be derived even though I was to connect. I only have one house."

No statement is made by any of the plaintiffs' witnesses as to the value of the property before the improvement compared with the value thereafter, and no facts are stated showing an inequality of assessment between the different property owners. Their complaint is based largely upon their opinion as to the advisability of making the improvement. The evidence of experienced engineers and others who testified on behalf of defendant is to the effect that the sewer system is practical and sufficient to drain all the area comprised in the limits of the district described on the map contained in the record, and that, when the system is completed by the construction of necessary laterals, the expense, so far as the location is concerned, will be practically equal.

19. Plaintiffs E. F. Rogers, Caroline Morton, Nettie G. Morton, H. V. Doe, J. F. McDonald, Cecilia Knapp, Linda A. Cotterman, and W. W. Walker show by their evidence that their property was prior to the establishment of this drain provided with a sewer constructed across their land by the State of Oregon; that they have a right to connect with the latter, and that most of them have so connected at considerable expense; and that this sewer already constructed, which was authorized by the city, is sufficient to drain all their property. There is a clause in each of the deeds for the right of way for the State sewer, given to the State of Oregon by these plaintiffs, which is similar to the following:

"In consideration of the rights hereby conveyed by said Linda E. A. Cotterman and Owen Cotterman, her husband, they shall have the right to make connections with said sewer at the places and in the manner designated, within said premises, by the Oregon State Board of Agriculture, acting for and on behalf of said State,

which connections shall be used only for the lands of said grantors crossed by said sewer."

If land is drained sufficiently by existing sewers authorized by the municipality, no assessment can be levied for the construction of a new sewer, when no benefit to the realty is derived therefrom. 1 Page and Jones, Taxation by Assessment, § § 387, 563; *Potter* v. *Village of Norwood,* 21 Ohio Cir. Ct. Rep. 461. The property of these last-named plaintiffs was not benefited by the sewer, and the municipal officers were without authority to assess the expense thereof upon the same. To this extent the assessment should be canceled.

The decree of the lower court should be modified so as to sustain both the original and deficit assessments, with the exception above noted; and it is so ordered.

MODIFIED.

Mr. Justice MOORE and Mr. Justice BURNETT took no part in the consideration of this case.