## Case No. 10,556.

OREGON & W. TRUST INV. CO. v. SHAW et al.

[5 Sawy. 336.] [1]

Circuit Court. D. Oregon. Dec. 6, 1878.

### MERGER—ASSIGNMENT OF MORTGAGE.

1. The record of deeds does not impart notice of merger, which depends upon the intention of the party or other extrinsic facts; and if any one takes a conveyance of premises upon the assumption that a former mortgage to his grantor has been merged in a subsequent conveyance of the fee, he does so at his own peril.
[Cited in Stubblefield v. Menzies, 11 Fed. 273.]

2. A party purchasing premises upon which. as appears by the record, there is an unsatisfied mortgage, takes the conveyance with notice that the mortgage is an existing lien in the hands of some one; and that he takes subject to it, unless the mortgagee is the owner thereof.

3. A valid mortgage in the hands of a bona fide assignee is preferred to a subsequent one. although the assignment is not recorded, unless the statute requires such record; but as between

[1] [Reported by L. S. B. Sawyer, Esq., and here reprinted by permission.]

bona fide assignees of the same mortgage, the assignment first recorded will have priority.

This suit is brought to enforce the lien of a mortgage executed to the complainant by C. W. Shaw and wife upon the south half of the donation of John W. Chambers and wife, situate in Polk county, Oregon, and being parts of sections 31, 32 and 33, in township 6, south range 3 west of the Wallamet meridian.

Ellis G. Hughes, for complainant.

H. W. Holmes and Claude Thayer, for defendant Swegle.

DEADY, District Judge. The cause was heard on the bill and answer of Charles Swegle. The facts appearing therefrom are as follows: On April 28, 1877, Shaw borrowed three thousand dollars of the complainant, for which he gave his note, payable on June 1, 1882, with interest thereon at the rate of ten per centum per annum, payable semi-annually; and on the same day, as a security for the payment thereof, executed, together with his wife, a mortgage upon the premises aforesaid, which was duly recorded on May 9, 1877. This mortgage contained a clause to the effect, that if default was made in the payment of any of said installments of interest, the complainant might then·declare the whole debt due; and such default was made on December 1, 1877, and the debt declared due on account thereof. On February 12, 1877, one W. Q. Adams, being indebted to said Shaw & Co. in the sum of one thousand five hundred dollars, gave his note for said amount, payable to them or bearer, on November 1, 1877, with interest at the rate of one per centum per month, and upon the same day executed a mortgage to Shaw & Co. upon the premises to secure the payment of said note, which mortgage was duly recorded on February 13, 1877; and that on said last-mentioned day said note and mortgage was, for a valuable consideration, transferred by said Shaw & Co. to the defendant, Charles Swegle; and that he is now the bona fide owner and holder of the same. At and from February 12 to April 1, 1877, said Adams was the owner in fee of said premises, as appeared by the records of said county; but thereafter, and at the date of the note and mortgage given by said Shaw to complainant, the former, as appeared by said records, was such owner thereof.

The transfer or assignment of the note and mortgage to Swegle was not recorded, but complainant had notice of the existence of the same and might, with reasonable diligence, have ascertained the fact of the transfer to the defendant Swegle.

It does not appear directly in the bill and answer, as it should, that after the mortgage to Shaw & Co., and after April 1, but before the mortgage to the complainant, Adams conveyed the premises in fee-simple to Shaw, but in this way, according to the admissions on the argument it came to pass, as stated in the pleadings, that Adams was the owner of the premises at the date of the mortgage to Shaw & Co., and Shaw the owner of the same at the date of the mortgage to the complainant.

The complainant contends that it was entitled to deal with Shaw as the absolute owner of the premises free of charge or lien, if it so appeared·upon the record of conveyances in Polk county; and that upon the facts stated, at the date of Shaw's mortgage to it there was, as appeared by such record, a union of the lien of the Adams mortgage and the fee in Shaw whereby it appeared therefrom that there was a merger of the former in the latter and the mortgage was thereby extinguished—satisfied. In the consideration of this case the interest of the mortgagee will be spoken of as a mere lien—the equitable doctrine on the subject prevailing in this state—and the interest of the mortgagor as the fee. Witherell v. Wiberg [Case No. 17,917].

When two estates or interests in the same land become united in the same person the less estate or interest is annihilated, and in law phrase said to be merged or drowned in the greater, unless·there be some purpose beneficial to such person or contrary intent declared.by him, to prevent it, in which case they remain separate. 2 Black, 177; Forbes v. Moffat, 18 Ves. 384; Starr v. Ellis, 6 Johns. Ch. 396; James v. Johnson, Id. 422, 2 Cow. 303.

But in this case there never was any merger of the Adams mortgage and fee in Shaw, because they were never united in his person—Shaw having transferred the former to the defendant, Swegle, before he became the owner of the latter. Neither did the record show that there was any such merger, but only, that there might have been. Because Shaw owned the mortgage on February 12, 1877, it did not follow that he owned it on April 28, when he received the conveyance of the fee—and upon this material point the record was silent. Indeed, it does not appear that the conveyance of the fee to Shaw even purported to be in satisfaction of the mortgage debt, or that there was otherwise any relation or connection between them.

But it matters not what was the state of the record on this question. The record of deeds is not made for the purpose of giving notice of when the merger of estates takes place, and is therefore of no authority upon the subject. If a party examines the record and concludes there has been a merger of estates in certain premises, and acts upon that conclusion he does so at his own risk, and if mistaken must bear the consequences. Purdy v. Huntington, 42 N. Y. 350.

As is said in a late work (Jones, Mortg. § 872), "Inasmuch, therefore, as merger takes place or not, according to the actual or presumed intention of the mortgagee, subse-

quent purchasers cannot rely upon the record as showing merger. They must go beyond this, and ascertain whether there has been a merger in fact; and they act at their own peril if they do not require their grantor to produce the mortgage and note supposed to be merged, and discharge the mortgage of record, or show that it constitutes a part of the title to the estate."

The question of priority, then, between these two mortgages must depend upon the proper construction of the statute regulating the recording of deeds and mortgages. Upon this point the argument for the complainant is, that as the record stood at the date of its mortgage, Shaw, as the mortgagee of the Adams mortgage, had an apparent right to acknowledged satisfaction thereof before the clerk, and thereby discharge the same; and that if he had done so, any one would be protected in dealing with him as the absolute owner of the property as against the prior assignee of such mortgage—the assignment thereof not being recorded; and that as the effect of the conveyance to Shaw by Adams was to satisfy the mortgage of the latter, therefore the complainant had the same right to deal with Shaw as the owner of the property, discharged from the lien of the mortgage, as if satisfaction thereof had been directly acknowledged by him on the record. In this argument there are several erroneous assumptions: First, that the record of deeds and mortgages is but one record, and that an entry upon either of them may be qualified or affected by an entry in the other. But the statute (Or. Laws, p. 518, § 23) provides that there shall be separate books for the record of deeds and mortgages, and the satisfaction of a mortgage must be entered in the book of such records. Therefore, a satisfaction of a mortgage entered in the record of deeds would be without effect for any purpose. It is well settled that a deed recorded in the book of mortgages, and vice versa, is no record, and gives notice of nothing. James v. Morey, 2 Cow. 316. Second, that a mortgagee who has assigned his mortgage has still authority to acknowledge satisfaction thereof on the record; or that if he does so, his prior assignee is bound by it as against a subsequent bona fide purchaser for a valuable consideration.

The statute (Or. Laws, p. 519, §§ 30, 39) provides that a mortgage may be discharged upon the record thereof "by the mortgagee, or his personal representative or assignee" acknowledging satisfaction thereof before the clerk, or executing a certificate to that effect with the formalities of a deed, and presenting the same to the clerk.

Probably the statute is defective in not requiring the party making such acknowledgment or certificate to produce evidence that he is at the time such mortgagee or assignee, and is entitled to discharge the mortgage. The production of the note and mortgage, or the latter only, where there is

no personal obligation, ought at least to be provided for, and an indorsement made upon them to the effect that they are no longer in force.

But certainly it cannot be maintained that an acknowledgment of satisfaction of a mortgage by a person without interest in the subject—as a mortgagee after assignment, or an assignee who has assigned—can in any degree affect the right of the assignee, who was then the bona fide owner and holder of the debt and security. Such an acknowledgment is simply a fraud, and if any person must suffer by it, it ought to be the person who, by ignorance or carelessness or otherwise, was deceived by it, and acted upon it, and not the assignee who acquired the mortgage without fault, and is a stranger to the fraudulent transaction. As well say that a purchaser in good faith from the grantee in a forged deed, that has been admitted to record, is thereby protected at the expense of the true owner, who is without error or fault in the premises.

Besides, the assertion that Shaw appeared to have the right to satisfy the mortgage is based, not upon the record, but an inference therefrom, that there was a merger of the fee and lien of the mortgage in Shaw, which is now shown to have been erroneous. These assumptions being unfounded, the argument based upon them falls to the ground.

But a sufficient answer to this argument lies in the fact that Swegle's mortgage was not satisfied on the record, and did not appear to be. Prima facie it was still due to some one, and therefore not extinguished. As it is well said in Jones on Mortgages (section 474): "If the premises are conveyed to the mortgagee after he has assigned the mortgage, there is no merger of the mortgage title. It makes no difference that the assignment is not recorded. * * * Of course, the purchaser is charged with constructive notice of the existence of a mortgage, and the continuance of its lien, by its record. Having this information, he is chargeable in law with the further notice that the mortgage is a lien in the hands of any person to whom it may have been legally transferred, and that the record of such transfer was not necessary to its validity, nor as a protection against a purchaser of the property mortgaged, or any other person than a subsequent purchaser in good faith of the mortgage itself, or the bond or debt secured by it; but rather that one purchasing the premises would take them subject to the lien of the mortgage irrespective of the ownership of it, unless the mortgagee was the owner. That knowledge and notice made it his duty, in the exercise of proper diligence, to inquire whether his vendor, the mortgagee, was still the owner and holder of the mortgage; and his omission to make that inquiry deprives him of the protection of a bona fide purchaser."

A mortgagee is a purchaser and comes within this rule. But it is further contended that it was the duty of Swegle to have recorded his assignment, and not having done so, and the complainant having been thereby led to believe that the mortgage was still the property of Shaw, equity will, as between the two bona fide creditors, impose the loss arising therefrom upon the one whose negligence made such loss possible.

This argument also rests upon the assumptions which are disputed. First, that it was the duty of Swegle to have the assignment to him recorded; and, second, that the record of mortgages in some way showed that the Adams mortgage was satisfied or extinguished.

As to the second assumption that there can be no doubt of its incorrectness. From the record of mortgages, it appeared on April 28, 1877, that the Adams mortgage was then a valid subsisting lien on the premises as security for the payment of a negotiable note not yet due, and nothing more. What else appeared on the record of deeds, if anything, was immaterial.

But as to the first assumption, the question is not so clear; and being one which arises simply upon the construction of a local statute, it is to be regretted that it has not been considered by the supreme court of the state. The general utility and convenience of recording the assignment of a mortgage, or in default thereof of postponing it to the conveyance of a subsequent purchaser or mortgagor in good faith, and for a valuable consideration, which shall be first recorded, may be admitted. But it must not be forgotten that at common law a conveyance or other instrument relating to real property was effective without being recorded, and that the registration of such instruments is purely a creature of statute. Unless then the statute required Swegle to record the transfer or assignment of the Adams mortgage, he is not in fault for omitting to do so. It is admitted that there is no specific direction in the statute upon the subject. The only mention of an assignment, as such, is found in section 27 of the chapter on conveyances (Or. Laws, 519), which provides that "the recording of the assignment of a mortgage shall not in itself" be notice to the mortgagor, so as to invalidate a payment made by him to the mortgagee. This is merely the assertion of a rule that had long been established by the courts. Murray v. Lylburn, 2 Johns. Ch. 443; Livingston v. Dean, Id. 479; Livingston v. Hubbs, Id. 512; Hubbard v. Turner [Case No. 6,819].

The most that can be said for this provision is that it impliedly authorizes an assignment to be recorded, or rather contemplates that it may be recorded by virtue of some other provision or statute. And yet by a still stronger implication arising out of sections 22 and 34 of said chapter, and the very nature of the case, it is provided that no instrument affecting the realty, which includes an assignment, shall be admitted to record, unless acknowledged and certified as a conveyance. An assignment of a mortgage may be made by an instrument in the form of a conveyance, and, in such case, may be admitted to record. But an assignment of a mortgage may be a mere writing under the hand of the assignor, declaring that he thereby assigns the mortgage to a person therein named. Such a writing is effectual to pass the lien of the mortgage, but it would not be entitled to record unless acknowledged and certified. But in the case of a mortgage given as security for a negotiable note, the debt being the principal and the security the incident, the same may be assigned by the simple indorsement or delivery of the note. In such case there is no assignment to record.

In the absence, then, of any legislative direction to that effect, there does not seem to be any obligation resting upon an assignee to record his assignment, to protect himself against any subsequent purchaser or mortgagee. As between different assignees of the same mortgage, the question of priority could not well arise, because an assignment without the delivery of the note and mortgage, except under peculiar circumstances, could hardly be considered as made or accepted in good faith; yet if such question should arise between assignees acting in good faith, I suppose that under section 34 of the recording act, the assignment first recorded would prevail, because it is considered a conveyance of the interest assigned. But the question here is an altogether different one. Shaw was not the owner of the Adams mortgage when he made the mortgage to the complainant, and his conveyance could not affect what he did not own. On the record, the mortgage appeared unsatisfied and the complainant must be held to have taken its mortgage with knowledge of that fact. The equity of the defendant Swegle being prior in point of time is the stronger in law. If the complainant has made a mistake it must take the consequences, and if a fraud has been practiced upon it by Shaw it ought not to be allowed to shift the burden to the defendant Swegle.

A decree will be entered directing a sale of the premises, and a distribution of the proceeds among the parties hereto according to the priority of their liens in point of time.

[This decree was affirmed on rehearing. Case No. 10,557.]