Argued January 26, modified February 23, 1921.

## UNITED STATES NAT. BANK v. HOLTON.

(195 Pac. 823.)

**Mortgages—Clerical Error in Assignment Does not Invalidate.**

1. The fact that a written assignment of a mortgage, correctly referred to by book and page, recited as the date of the mortgage the date of the assignment and contained the words "interest to date" where the word "note" should have been written, does not invalidate the assignment as between the parties.

**Mortgages—Assignment Without Delivery of Mortgage and Note is Good Between Parties.**

2. An assignment of a mortgage recorded under Sections 9879, 9880, Or. L., is good as between the parties thereto, though the mortgage and negotiable note secured thereby were not delivered to the assignee.

**Estoppel—Assignee Who Did not Require Delivery of Mortgage and Note must Stand Loss.**

3. An assignee of a mortgage securing the payment of a note, who did not require the delivery of the note and mortgage to him at the time of the assignment, and thereby enabled the mortgagee

fraudulently to pledge the note and mortgage as security for a loan by vesting him with possession. of the property from which ownership is presumed, under Section 799, paragraphs·11, 12, Or. L., must bear the loss occasioned by his negligence.

**Mortgages—Assignment of Note Carries Mortgage With It.**

4. The lawful assignment of a negotiable promissory note, payment of which is secured by. a mortgage, carries with it the mortgage.

**Mortgages—Assignee Held Entitled to Surplus in Preference to Purchaser from Mortgagor.**

5. The assignee of a mortgage who had failed to require delivery of the note and mortgage to him, and thereby lost his right as against a subsequent assignee, is entitled to the surplus of the proceeds of sale after satisfaction of the subsequent assignee as against the purchaser of the land from one who was not shown to have any title thereto.

**Mortgages—Defendants in Foreclosure, Claiming Surplus, have Burden of Proving Interest in Property.**

6. Defendants in foreclosure proceedings, who claimed a right to the surplus after payment of the mortgage debt, have the burden of proving their ownership of the interest in the property on which they base their claim.

From Multnomah: WILLIAM N. GATENS, Judge.

Department 2.

This is a suit in equity commenced by the United States National Bank in the Circuit Court of the State of Oregon in and for Multnomah County, for the purpose of foreclosing a mortgage executed by Ada E. Nickles and H. T. J. Nickles, her husband, to secure their negotiable promissory note bearing date December 30, 1909, payable to the order of Frank Holton, for the sum of $2,400. The defendant William Vaetz filed an answer and cross-complaint, in which he alleged that on the seventeenth day of June, 1911, one Frank Holton, for a valuable consideration, duly indorsed and transferred the promissory note involved in this litigation to him, and sold, assigned, transferred, and set over said mortgage to him (Vaetz), by written assignment thereof, which was executed so as to entitle the same to be recorded

and which was recorded on the nineteenth day of June, 1911, in the office of the county clerk of Multnomah County, Oregon, in the record of mortgages of said county.   Ada E. Nickles filed an answer, denying the allegations of the separate answer and cross-complaint of defendant Vaetz.   The Pacific Northwest Adjustment Company, upon its own motion, became a party defendant and filed a general denial to the allegations contained in Vaetz's cross-complaint.   The defendants Ada E. Nickles, Jean C. Holton, and Geo. W. Bates & Co., made no answer to plaintiff's complaint, and were duly adjudged to be in default.

Testimony was taken, showing the following facts:

That Ada E. Nickles and her husband, H. T. J. Nickles, executed their negotiable promissory note bearing date December 30, 1909, payable to the order of Frank Holton, for the sum of $2,400, with interest at 8 per cent per annum, due on or before two years after date, and for the purpose of securing the same executed and delivered to Holton a mortgage on certain real property.   On the twenty-sixth day of May, 1910, Holton, for value, duly indorsed the note, and delivered it, together with the mortgage, to the United States National Bank.   The note was used as collateral security for the payment of $1,000 borrowed at that time by Holton from the bank. On June 17, 1911, Holton was permitted to take the mortgage for some purpose not disclosed by the record, and on July 7, 1911, both the note and mortgage were returned to him.   On September 8, 1911, the note and mortgage were again transferred and delivered to the bank as security for another loan from the bank, and the plaintiff has, since then, had continuous possession of the note and mortgage.

On the seventeenth day of June, 1911, William Vaetz, defendant and cross-complainant, paid Frank Holton $2,400 as the consideration for an assignment of the aforesaid mortgage. Holton made an alleged assignment, reading, in part, as follows:

" * * Do grant, bargain, sell, assign, transfer and set over, unto the said party of the second part, a certain Indenture of Mortgage, bearing date the 17th day of June, A. D. One Thousand Nine Hundred and Eleven (1911), made and executed by Ada E. Nickles and H. T. J. Nickles, her husband, to the said party of the first part, to secure the payment of the sum of $2,400, Twenty-Four Hundred and 00/100 Dollars, together with the *interest to date* or obligation therein described, and the money due or to grow due thereon, with the interest; which said Indenture of Mortgage was recorded in the office of the County Clerk of the County of Multnomah, State of Oregon, in Book 387 of Mortgages, page 139, on the 17th day of May, A. D. 1910."

This purported assignment was duly executed and delivered to Vaetz, together with a promissory note for the sum of $2,400 signed by the said Ada E. Nickles and her husband, H. T. J. Nickles, but which note was dated December 30, 1910, and bore interest at the rate of 7 per cent per annum. Holton paid interest on the genuine mortgage note that he transferred to the bank from date of delivery to and including October 29, 1913. He also paid interest on the note which he delivered to Vaetz to and including November 13, 1914. Vaetz now claims title to the mortgage note and mortgage by virtue of the assignment made and delivered to him by Holton on June 17, 1911, which he caused to be recorded in the mortgage records of Multnomah County on June 19, 1911. Thereafter the court made its findings of fact and conclusions of law, based upon which it decreed that

the United States National Bank is entitled to a judgment against the defendant Ada E. Nickles for the sum of $2,400, with interest thereon from September 30, 1913, at the rate of 8 per cent per annum, the further sum of $200 attorney's fees and the costs and disbursements of this suit; and that plaintiff's mortgage described in the complaint in this suit is a first lien upon the following described real property situate in Multnomah County, Oregon, to wit:

Lot Eleven (11) in Block One (1), and Lot Six (6) in Block Eight (8), in Broadway Addition to the City of Portland, according to the duly recorded plat thereof in the office of the County Clerk of said Multnomah County;

—that plaintiff is the owner and holder of said mortgage and the note it secures, and that plaintiff's said mortgage is a first lien in plaintiff's favor upon said real property and superior to any right, title, interest, claims, or liens, if any, of the defendants or any of them; that the defendant, William Vaetz, has no lien upon said real property; that plaintiff's said mortgage be, and the same is hereby foreclosed; that said real property be sold as upon execution, and that the proceeds of such sale be applied first to the payment of plaintiff's costs and disbursements in this suit, accruing costs, plaintiff's attorney's fee, and to plaintiff the sum of $1,726, with interest thereon from the seventeenth day of November, 1918, at 8 per cent per annum, and the remainder, if any, to be paid to defendant the Pacific Northwest Adjustment Company; that the defendants and each of them be, and they are hereby, forever barred and foreclosed of all right, title, interest, claims, or liens which they or any of them had on the thirtieth day

of December, 1909, the date of plaintiff's said mortgage, or have since had, in or to said real property or any part thereof, and from setting up or maintaining any further claim or demand in or to the same or any part thereof, except as redemptioners under the statute, and that plaintiff have judgment against the defendant, William Vaetz, for the trial costs herein, and that proper execution and order of sale issue.

Vaetz appeals from the judgment, and assigns error as follows:

"Error of the court in holding that appellant was not the owner of the note and mortgage involved in the suit * * .

"Error of the court in holding that the United States National Bank was the owner of the said note and mortgage.

"Error of the court in refusing to render judgment in favor of appellant * * .

"Error of the court in rendering judgment in favor of the United States National Bank for $2,400 * * .

"Error of the court in holding that the United States National Bank had any interest in said note or mortgage * * .

"Error of the court in finding or assuming that The Pacific Northwest Adjustment Co. had any interest whatsoever in said note or mortgage, or in said mortgaged premises.

"Error of the court in decreeing sale.

"Error of the court in decreeing that out of the proceeds of sale there be paid to plaintiff $1,726 * * .

"Error of the court in decreeing that the remainder of said proceeds * * or any sum be paid to The Pacific Northwest Adjustment Co."

MODIFIED.

For appellants there was a brief over the name of *Messrs. Veazie, McCourt & Veazie,* with an oral argument by *Mr. J. C. Veazie.*

For respondent, U. S. National Bank, there was a brief over the name of *Messrs. Chamberlin, Thomas, Kraemer & Humphreys,* with an oral argument by *Mr. Warren E. Thomas.*

BROWN, J.—This lawsuit is a result of the perfidy of one Holton and of the negligence of one William Vaetz, the defendant and cross-complainant. Vaetz bargained with Holton for the sale and transfer of the mortgage mentioned in our statement of the case. Holton executed an assignment purporting to transfer the mortgage, describing the same as bearing date June 17, 1911, instead of December 30, 1909, the date of the mortgage. However, the assignment refers to the book of mortgages and the page thereof where the mortgage was recorded. A 'blank form of assignment was used, and in filling it out the words "interest to date" were inserted where the word "note" should have been written. The assignment was placed on record in accordance with the provisions of Sections 9879 and 9880, Or. L.

1. In the early case of *Mathews* v. *Eddy,* 4 Or. 225, it was held that a clerical error in the description of a tract of land will not vitiate a deed, where the intention of the parties can be ascertained with certainty from the instrument, when considered in connection with the situation of the parties and the subject matter. To the same effect are *Raymond* v. *Coffey,* 5 Or. 132; *Moreland* v. *Brady,* 8 Or. 313 (34 Am. Rep. 581).

2. Notwithstanding the fact that Vaetz failed to obtain, and Holton did not deliver, the mortgage assigned, or the negotiable promissory note secured thereby, the assignment was good as between Vaetz and Holton.

3. The promissory note, at the time of the assignment of the mortgage, was held by the plaintiff as collateral security for a loan to Holton. On July 7, 1911, upon the payment of his indebtedness to the bank, Holton received the note and mortgage and retained the same for about two months, when he again assigned and delivered the same to the plaintiff bank as security for a loan. These instruments were never in the possession of Vaetz. It is a presumption of law, satisfactory until overcome:

"That things in possession of a person are owned by him; that a person is the owner of property from exercising acts of ownership over it or from common reputation of his ownership": Section 799, Or. L., paragraphs 11 and 12.

Holton, in pledging the securities, committed a wrong that must fall upon one of two persons. The law protects the one who is guilty of the least negligence. The parties here are not equally faultless and do not stand in equal right. Vaetz negligently permitted the mortgagee to retain control and possession of the mortgage and negotiable promissory note secured by it. The presumption of law arising from the fact that the note and mortgage were in Holton's possession at the time the bank took them again on September 18, 1911, was strengthened by the further fact that he was the payee named in the note. Vaetz's negligence permitted Holton to deceive the plaintiff.

As appears from our statement, Holton delivered to Vaetz what seems from the record to be a negotiable promissory note for the sum of $2,400, payable to the order of Frank Holton, dated December 30, 1910, and bearing interest at the rate of 7 per cent per annum. This note is not a duplicate of the mort-

gage note, it having been made a year later and drawing a lesser rate of interest than the mortgage note. This was the note that Vaetz accepted from Holton, instead of the note described in the mortgage.

From Vaetz's own testimony, though he is a victim he is not faultless. In permitting Holton to retain that negotiable promissory note and the mortgage securing it, he empowered him to obtain money from the bank, while without the custody of the note and mortgage Holton would not have been enabled tó defraud the plaintiff.

"It is not often that the question óf priority of rights under different assignments of the same mortgage can arise, because an assignment is generally accompanied by a delivery of the note or bond secured by the mortgage, and 'of the mortgage itself; and except under peculiar circumstances a person acting in good faith would not take a mere written transfer of the mortgage title without delivery of these. The fact that the assignor did not have these papers to deliver would be enough ordinarily to put the purchaser on his guard, even if it would not amount to notice to him of prior assignment. At any rate, the absence of these papers would be enough to put in doubt his good faith in taking the assignment, and would make him chargeable with notice of any defect there may be in the assignor's title": Jones on Mortgages (6 ed.), § 483.

Justice DEADY said:

"As between different assignees of the same mortgage, the question of priority could not well arise, because an assignment without the delivery of the note and mortgage, except under peculiar circumstances, could hardly be considered as made or accepted in good faith": *Oregon & Wash. Trust Inv. Co.* v. *Shaw,* 5 Sawy. 336 (18 Fed. Cas. 766, No. 10,556).

4. The debt in the instant case, as we have seen, was evidenced by a negotiable promissory note. The mortgage was made and executed to secure the payment of the indebtedness of $2,400, according to the tenor of the note. The lawful assignment of such a note carries with it the mortgage.

As stated by Justice McBride in *Kaiser* v. *Idleman,* 57 Or. 228 (108 Pac. 193, 195, 28 L. R. A. (N. S.) 169):

"The note being by the law-merchant readily transferable by indorsement and delivery, the courts, to facilitate the transaction of business, have held that, for certain purposes, the mortgage is an incident of the note, and passes with it."

In *Bamberger* v. *Geiser,* 24 Or. 206 (33 Pac. 609, 610), Justice LORD wrote that—

"It is a familiar principle that where a debt is secured by mortgage, the debt is the principal and the mortgage is the incident, and that an assignment of the debt is an assignment of the mortgage. Here there was a written assignment of a negotiable note before maturity, and a delivery of the mortgage.

"The assignment of the note carried the mortgage, as the former is the principal and the latter the incident."

To similar effect are *Roberts* v. *Sutherlin,* 4 Or. 219; *Barringer* v. *Loder,* 47 Or. 223 (81 Pac. 778); *Roth* v. *Troutdale Land Co.,* 83 Or. 507 (162 Pac. 1069).

In the case of *Reeves* v. *Hayes,* 95 Ind. 524, 525, Chief Justice ELLIOTT said:

"Promissory notes are articles of commerce, and pass from hand to hand by barter and sale. The transfer of a note carries the mortgage, for the former is the principal and the latter the incident. This is in accordance with the universal rule that the grant of the principal thing carries all the incidents.

*Matthews* v. *Wallwyn,* 4 Ves. 118; *Jackson* v. *Blodget,* 5 Cow. 202; *Green* v. *Hart,* 1 Johns. 580; *Johnson* v. *Hart,* 3 Johns. Cas. 322. In *Hubbard* v. *Harrison,* 38 Ind. 323, it was said: 'The assignment of a mortgage, independent of the debt which it is given to secure, is an unmeaning ceremony.' It has always been the law of this state that the assignment of the note carries the mortgage: *Blair* v. *Bass,* 4 Blackf. 539. In *Hough* v. *Osborne,* 7 Ind. 140, the court said: 'The only thing easily perceivable as to the transfer of the mortgage security without the notes, was its futility': *Garrett* v. *Puckett,* 15 Ind. 485; *Gower* v. *Howe,* 20 Ind. 396.

''The assignment of a note negotiable by the law-merchant carries the mortgage security, and in the hands of a *bona fide* holder the security is protected to the same extent as the note itself: *Gabbert* v. *Schwartz,* 69 Ind. 450; *Bayless* v. *Glenn,* 72 Ind. 5; *Carpenter* v. *Longan,* 16 Wall. 271 [21 L. Ed. 313; see, also, Rose's U. S. Notes]; 1 Dan. Neg. Inst. 834; Clemens Corp., § 158.''

The case of *Barringer* v. *Loder,* 47 Or. 223 (81 Pac. 778), is in point, and construes and applies Section 9884, Or. L.; the same being Laws of 1889, page 38, entitled, ''An Act to provide for the discharge of mortgages upon affidavit,'' and Sections 9879, 9880, and 9885, Or. L., adopted in 1895, page 55, being ''An Act to provide for the transfer and satisfaction of mortgages upon real estate and the recording thereof.''

The facts in *Barringer* v. *Loder,* 47 Or. 223 (81 Pac. 778), are as follows: One Hayden purchased from William Barringer realty situate in Clackamas County, receiving a deed therefor. He paid part of the purchase price in money and in payment of the balance delivered to Barringer a joint and several promissory note executed by himself and wife, payable to the order of Barringer three years after date. They also executed and delivered to Barringer their

mortgage upon the premises to secure the payment of the note. Later Barringer and wife separated, and in the division of the property this note and mortgage were to become the individual property of the wife. The note was accordingly indorsed by Barringer, and both instruments delivered to Mrs. Barringer. Thereafter, Barringer negotiated a sale of the note and mortgage to Loder, claiming that the note and mortgage had been lost and that for this reason he was unable to produce and deliver them to Loder. Acting upon this information, Loder went to the records and found the title of the mortgage to be in Barringer. An assignment was drawn as provided by said Sections 9879 and 9880, Or. L., executed by Barringer, who covenanted that he was the owner of the mortgage thereby assigned. Loder paid Barringer the purchase price and recorded his assignment. Loder also collected the amount due on the mortgage and satisfied the same of record. Justice WOLVERTON in rendering the opinion of this court, said:

"The cardinal question presented here is, who acquired the better title to the note and mortgage in suit, the plaintiff or Loder? * *

"The appellants base the right of Loder to rely upon the record and their right to discharge by payment to him upon Sections 5362 and 5363 of B. & C. Comp. (Sections 9879 and 9880, Or. L.); it being insisted that a mortgage cannot be otherwise assigned or transferred than as by these sections prescribed. The first section provides, in effect, that mortgages may be assigned or transferred by an assignment in writing, executed and acknowledged with the same formalities as deeds and mortgages, etc., and the second that every assignment of a mortgage shall be recorded at full length, and reference shall be made to the book and page containing such assignment upon the margin of the mortgage record. The

word 'may' where appearing in the former section, it is urged, should be construed as mandatory, and to mean 'shall' or 'must,' thus precluding and invalidating any other form of assignment. These sections were enacted in 1895, with two others, one being Section 5368 of the Code (9885 Or. L.), and the other the emergency clause, which latter shows why the act was adopted: Laws 1895, pp. 55, 56, §§ 62, 63, 64. It was because it had been determined, among other things, by the decisions of this court, that there were no provisions in the statute for the recording of assignments of mortgages. Section 5368 of the Code (§ 9885, Or. L.) provides that no mortgage upon real estate shall be satisfied or released so as to free the property from the lien of the mortgage except by the person appearing upon the records to be the owner thereof, and that a satisfaction or release of such mortgage by a party so appearing to be the owner or holder should operate to free the property of the lien so far as it affects subsequent purchasers and indorsees for value, without notice. Prior to the enactment of this statute there existed another, being Section 5367, B. & C. Comp. (§ 9884, Or. L.), adopted in 1889 (Laws 1889, p. 38, §§ 1, 2, 3), which provides, in effect, that whenever a promissory note secured by a mortgage on real property shall be transferred by indorsement, without formal assignment, and such mortgage shall have been duly recorded, the same, upon payment of the note, may be discharged of record by the owner or holder of the note making and filing with the recorder or county clerk, as the case may be, a certificate, duly verified by his oath, declaring, in substance, that he is the owner and holder of the note secured by the mortgage by indorsement, and that said note has been fully paid, and by proving the fact to the satisfaction of the recorder or clerk and delivering the note to that officer. Further provision is made for recording the certificate and note and making a notation thereof upon the recorded mortgage, which entry, it is declared, shall have the effect of a deed of release of

the mortgage. The act of 1895 makes no express repeal of this statute, and it must remain operative, unless the provisions of the former are repugnant thereto; but we take it that there was no design to repeal it, and this is evidenced by the use of the word 'may' in Section 5362 (9879) and the emergency clause to which attention has been called.

"When these statutes were enacted, an indorsement of a note had been long recognized as carrying with it the mortgage given to secure its payment, as the latter was regarded but an incident to the debt: *Roberts* v. *Sutherlin,* 4 Or. 219; *Bamberger* v. *Geiser,* 24 Or. 204 (33 Pac. 609). The act of 1889 is in express recognition of this manner of assignment, and it provides an appropriate method of satisfying the mortgage of record by the assignee or indorsee of the note. When the legislature came to the enactment of the subsequent statute, it very properly used the word 'may' with reference to an assignment by separate writing, still recognizing the right, as it had formerly done, to assign by indorsement of the note. When it comes to the manner of recording the assignment, the word 'shall' is used. Why use the word 'may' in one section and 'shall' in the succeeding one? The relationship indicates an intendment that there should be a distinction in their application in practice, and this is re-enforced by the legislative declaration that the act of 1895 was adopted because there existed no statute for the recording of assignments of mortgages. Assignments in the method designated then could be made before the statute as well as by assignment of the note, and the act simply prescribes that this may still be done by that method, but that such assignments shall be recorded in the manner pointed out."

No single fact is decisive of this case. This is a suit in equity. We have considered all the facts relating to the subject matter of the suit, the situation of the parties, their means of knowledge, the circumstances existing, the failure to require delivery of

the negotiable promissory note assigned, together with the mortgage securing it, likewise, the neglect to examine the registry records; the doctrine of priorities; and after deliberation upon all this we find that equity is upon the side of the plaintiff and that it should prevail.

5. Plaintiff alleged that on the thirtieth day of December, 1909, defendant, Ada E. Nickles, was the owner in fee simple of the real property mortgaged to Frank Holton. Defendant Vaetz admitted that allegation in his answer, and in his cross-complaint likewise alleged that Ada E. Nickles was the owner in fee simple of said real property. Upon cross-examination Mrs. Nickles testified, in substance, that the real property which she mortgaged to Holton was Holton's property, but that record title was in her. It appears from the record that she signed a number of notes for him that were secured by mortgages on other property. She testified that—

There was "quite a bit of property; quite a few mortgages signed. I don't know how many. I could not say. * * The property was his. Whenever he asked me to sign a note on a piece of property of his own I did it for him."

From her testimony, Mrs. Nickles appears to have been a dummy for Holton. Regardless of the nature of the title Mrs. Nickles had to the real property mortgaged by her, she does not seem to have been divested of that title at the time of the trial.

We have searched the record in vain for the purpose of ascertaining what right or claim Jean C. Holton may have had to the premises. There is nothing in the record, by way of allegation in the pleadings, or proof by evidence, to show that Ada E. Nickles and H. T. J. Nickles, her husband, or any other per-

son, sold or conveyed the real property covered by the mortgage to Jean C. Holton, or that she has any interest in the subject matter of the litigation. The same may be said concerning the right and title of The Pacific Northwest Adjustment Company.

6. The court found that Jean C. Holton duly conveyed said real property to the defendant The Pacific Northwest Adjustment Company, and that the defendant company is now the owner in fee simple of said real property and is entitled to any overplus of moneys realized on sale under execution in this suit, after payment of the sum of $1,726 with interest, costs, and attorney's fees. This finding is neither supported by the pleadings nor borne out by the evidence. The only testimony given upon the trial tending to show title to the property is that of Mrs. Nickles. We have already referred to the pleadings. If Jean C. Holton or the Pacific Northwest Adjustment Company had a *bona fide* interest in that real property, it was a matter for them to allege and prove affirmatively: *Bailey* v. *Hickey, ante,* p. 251 (195 Pac. 372), and Oregon cases there collected. The court erred in finding that the Nickles conveyed to Jean C. Holton the lands described in the mortgage, and in finding that defendant Holton conveyed the lands to the Pacific Northwest Adjustment Company. The court erred in finding or decreeing that said adjustment company has any interest in said real property, or is entitled to the overplus of moneys, or any money, realized on sale under execution in this suit.

A court of equity, like a jury, is confined to the record for evidence upon which to ground the finding of a fact. A legitimate conclusion of law must be based upon a fact legally found. A decree based

upon facts and conclusions of law not sustained by the evidence or record, cannot stand.

The defendant and cross-complainant, William Vaetz, is entitled to a judgment decreeing him to be the owner of that certain note and mortgage held and foreclosed in this suit, subject to the rights of plaintiff, and that said note and mortgage constitute a lien on said property in his favor, for the difference between the amount adjudged to be due plaintiff, together with its costs and disbursements, including attorney's fees, and the amount due on the said promissory note and mortgage; and he is further entitled to an order of this court adjudging and decreeing that said mortgage lien be foreclosed and that the real property be sold, subject to the rights aforesaid of plaintiff or its successor in interest, to satisfy the amount of his said lien, together with costs and disbursements, including his attorney's fees. Further relief cannot be granted to defendant and cross-complainant in this proceeding.

The only judgment for costs on appeal in this case will be entered here in favor of defendant and cross-complainant William Vaetz and against the Pacific Northwest Adjustment Company.

The decree of the lower court will be modified so as to accord with our views herein expressed.

MODIFIED.

BURNETT, C. J., and JOHNS and BEAN, JJ., concur.