Argued March 20; affirmed April 10, 1945

# BEAUCHAMP *v.* JORDAN ET UX.

### (157 P. (2d) 504)

Before BELT, Chief Justice, and KELLY, ROSSMAN, BAILEY, LUSK, BRAND and HAY, Associate Justices.

*R. F. Hollister,* of Portland (W. K. Royal, of Portland, on the brief), for appellant.

*David O. Bennett,* of St. Helens (W. W. Dillard, of St. Helens, on the brief), for respondents.

BAILEY, J.   This litigation originated in the filing of an action at law by plaintiff, Laura Beauchamp, to recover damages from defendants, Harvey H. Jordan and Nora M. Jordan, his wife, sometimes referred to as Norma M. Jordan, for the alleged conversion of 37 head of cattle.   The amended complaint contained three separate causes of action, the first cause being for the conversion of 34 head of cattle, the second

cause for the conversion of two head of cattle, and the third cause for the conversion of a Jersey bull.

The only answer filed by defendant Nora M. Jordan was a general denial to the amended complaint. Her husband, Harvey H. Jordan, after filing a general denial to the amended complaint, set forth four separate affirmative answers and asked for equitable relief. In the first affirmative answer, as amended on the trial of the case, he alleged that on the 10th day of August, 1939, Oren M. Beauchamp and Laura Beauchamp, his wife, for a valuable consideration, made, executed and delivered to the Portland Postal Employees' Credit Union their promissory note in the sum of $550, payable in monthly installments; that at the time of the execution of the note, Oren M. Beauchamp made, executed and delivered to the payee of the note a chattel mortgage on certain designated household furniture; that thereafter, and on the 21st day of June, 1941, Oren M. Beauchamp died; and that on the 9th day of July, 1941, the plaintiff herein, Laura Beauchamp, as further security for the payment of that note, executed and delivered to the Portland Postal Employees' Credit Union a chattel mortgage on 32 head of cattle "and offspring", and 50 head of milk goats. It is further alleged that the note and mortgages above-mentioned were transferred to defendant Harvey Jordan; that he was the owner and holder of them; and that there was due and owing on the note the sum of $416 with interest at the rate of 8% per annum from June 12, 1940.

In the second affirmative answer defendant Harvey Jordan alleged the execution and delivery of a note for $300 by plaintiff Laura Beauchamp to the First National Bank of Tigard; the execution and delivery

by her to the bank of a chattel mortgage on six head of cattle "and all increase" to secure the payment of that note; the transfer by the bank for a valuable consideration of the note and mortgage to defendant Harvey Jordan, ownership thereof by him, and the amount due on such note, to wit, $90.75, with interest at seven per cent per annum from June 13, 1942.

Defendant Harvey Jordan in his third affirmative answer alleged the execution and delivery by plaintiff Laura Beauchamp to him for a valuable consideration of a promissory note for $2,000, and also the execution and delivery by her of a chattel mortgage on 37 head of cattle "together with all increase" and 40 head of milk goats to secure the payment of the note. In connection with the third affirmative answer, it is alleged that the mortgage provided that the mortgagor, plaintiff herein, would not sell, mortgage or dispose of the mortgaged property or move any part of such property from Columbia county, Oregon, without the written consent of the mortgagee; and that in violation of the terms of the mortgage the mortgagor had sold five head of cattle covered by the mortgage and had removed a part of the mortgaged property to Clackamas county and the remaining part of it to Tillamook county, without the written consent of the mortgagee. It is further alleged that the mortgagor had failed to make the installment payment due on the first day of October, 1942, and that the defendant Harvey Jordan had declared the entire amount of the note due, had taken possession of the cattle, and at the time of filing the answer had them in his possession.

In his fourth affirmative answer, defendant Harvey Jordan alleged the execution and delivery on or about August 1, 1941, of another promissory note for $2,000

by plaintiff to him and the execution and delivery by Laura Beauchamp to him of a mortgage on real property in Columbia county to secure the payment of that note.

It is alleged in defendant Harvey Jordan's affirmative answers that the chattel mortgages and real estate mortgage hereinbefore referred to, copies of which were attached as exhibits, were all filed for record and that he was the owner of all such mortgages and the notes described in his answers. He asked for judgment against plaintiff Laura Beauchamp for the amount remaining due on the notes and for the foreclosure of the mortgages given as security for the payment of the notes.

All of the cattle referred to in plaintiff's first cause of action, and for which plaintiff seeks damages for their conversion by the defendants, are included in at least one of the foregoing chattel mortgages which defendant Harvey Jordan sought to have foreclosed. Some of these cattle are included in two of the mortgages.

Plaintiff, in her reply to defendant Harvey Jordan's first and second affirmative answers, admitted the execution and delivery of the notes and mortgages therein referred to but denied the assignment of the notes and mortgages to Jordan and the ownership thereof by him.

In her reply to defendant Harvey Jordan's third and fourth affirmative answers she admitted the execution and delivery of the notes and mortgages therein mentioned, and, as an affirmative defense thereto, alleged that on or about the 28th day of July, 1941, plaintiff and defendants entered into a written contract whereby defendants agreed to sell and plaintiff

agreed to buy certain described real property in Columbia county, Oregon, and that in accordance with the terms of that agreement plaintiff executed and delivered to defendant Harvey Jordan the notes and mortgages referred to in Harvey Jordan's third and fourth affirmative answers. A copy of this written agreement was attached as an exhibit. It is then alleged that the defendants had failed, refused and neglected to perform their part of the agreement in the following particulars, to wit: (1) to make, execute or deliver to the plaintiff "a good or sufficient warranty deed conveying to the plaintiff the real property described in said agreement" as provided in such contract; (2) to give to the plaintiff a policy of title insurance as provided for in the contract; and (3) "to clear the title to the real property described" in the contract. It is further alleged that at the time of entering into the agreement above referred to, the defendants did not have, nor have they subsequently thereto acquired, "a marketable title, or any title, to the real property described in" the contract; and that by reason thereof, and the other facts hereinbefore mentioned, there was a total failure of consideration for the two notes given as the purchase price for the real property

Defendant Harvey Jordan filed an answer to the plaintiff's affirmative defenses to his third and fourth affirmative answers, in which he denied that he had failed and refused to perform the terms of the agreement between him and the plaintiff concerning the sale of the land in Columbia county. He alleged that after entering into that contract he discovered that he was unable to convey to the plaintiff the mineral rights to certain of the property which he had agreed to sell and advised the plaintiff of that fact and offered to

return to her the payment that she had made on the contract; that the plaintiff thereupon waived conveyance to her of the mineral rights and agreed to and did thereafter accept a conveyance to the property which reserved the mineral rights; that thereafter the plaintiff entered into the sole and exclusive possession of the real property and ever since that time has been in the sole and exclusive possession of such property. Defend-- ant Harvey Jordan further alleged that after the plaintiff went into the possession of the property and during the month of August, 1941, he had advised the plaintiff that he had procured an attorney to institute suit to quiet title to the property conveyed by him to the plaintiff and that in such suit she was a necessary party plaintiff; that she had agreed to have the suit brought in her name, but later refused; and that he had been unable to have the title to the property quieted due to her failure to permit the suit to be instituted in her name.

The court entered a decree enjoining the plaintiff from the further prosecution of her first cause of action; entered judgment in favor of defendant Harvey Jordan and against the plaintiff Laura Beauchamp, for the balance due on the four notes hereinbefore mentioned, and decreed that the mortgages given to secure such notes, except the one on the furniture, be foreclosed and the property included in such mortgages sold. From this decree plaintiff has appealed.

Plaintiff admitted the execution and delivery to the Portland Postal Employees' Credit Union of the $550 promissory note and chattel mortgage on 32 head of cattle and 50 head of milk goats and also the execution and delivery of the $300 note and chattel mortgage to the First Bank of Tigard. They were

received in evidence without objection. She denied that the notes and mortgages above-mentioned had been assigned to the defendant Harvey Jordan.

■■ Harvey Jordan had the notes and mortgages in his possession and produced them at the trial. He testified that he had purchased them from the respective payees and mortgagees therein named, stating the amounts which he had paid, and that he was the owner of them. His testimony was uncontradicted. He failed, however, to prove the indorsement of the notes. The holder of a negotiable instrument payable to his order may transfer it for value without indorsement and such transfer vests in the transferee whatever title the transferrer had therein. § 69-320, O. C. L. A.; *Cady v. Bay City Land Co.,* 102 Or. 5, 201 P. 179, 21 A. L. R. 1367; *Columbia Hotel Co. v. Rosenberg,* 122 Or. 675, 260 P. 235; 10 C. J. S., Bills and Notes, § 226, p. 717. There is only one conclusion which can be reached from the record, to wit, that Harvey Jordan was the owner of the $550 and $300 notes.

■ The mortgages mentioned in defendant Harvey Jordan's first and second affirmative answers were given as security for the payment of the notes delivered by plaintiff to the Portland Postal Employees' Credit Union and the First Bank of Tigard respectively. They were merely an incident to the debts evidenced by the above-mentioned notes and the transfer of the notes effected a transfer of these mortgages. *Watson v. Dundee M. & T. I. Co.,* 12 Or. 474, 8 P. 548; *United States Nat. Bank v. Holton,* 99 Or. 419, 195 P. 823.

■ In addtion to the foregoing evidence, there was produced by Harvey Jordan and admitted in evidence a written assignment to him by the Portland Postal

Employees' Credit Union of the $550 note and mortgage and also an assignment of the $300 note and mortgage by the First Bank of Tigard. The only objection offered by the plaintiff to the admission of these documents in evidence was that they had not been "executed and acknowledged with the same formality as required in the execution of chattel mortgages." Section 68-204, O. C. L. A., on which she relies, provides that chattel mortgages *may* be assigned or transferred "by an instrument in writing, executed and acknowledged with the same formality as required in the execution of chattel mortgages". The method therein provided for the assignment of chattel mortgages is permissive and not mandatory. *Barringer v. Loder,* 47 Or. 223, 81 P. 778; *United States Nat. Bank v. Holton,* supra. Inasmuch as there is no statutory requirement that the corporate seal be affixed to assignments of chattel mortgages, the absence thereof from these assignments did not, as asserted by plaintiff, affect their validity. 14 C. J., Corporations, § 405, p. 334; 18 C. J. S., Corporations, § 175, p. 581; § 2-804, O. C. L. A.

On or about the 28th day of July, 1941, the plaintiff and defendants entered into a written contract whereby the defendants agreed to sell and the plaintiff agreed to purchase 380 acres of land in Columbia county for the consideration of $4,000. This contract provided that plaintiff had the option of paying $500 cash and executing a note for the balance, secured by a purchase money mortgage on the property, or the execution and delivery of two notes of $2,000 each, one to be secured by a mortgage on the real property and the other to be secured by a chattel mortgage on 30 head of cattle and 40 head of milk goats.

Harvey H. Jordan and Nora Jordan, his wife, are referred to in the contract for the sale of the real property as the first parties and plaintiff Laura Beauchamp as the second party. The fourth paragraph of the agreement is as follows:

"First Parties agree to give to Second Party a good and sufficient Warranty Deed to said premises together with a policy of title insurance showing marketable title in First Parties. It is specifically agreed by the parties hereto that in the event First Parties shall be required to clear title to said premises or any part thereof by suit or any other means, Second Party shall give unto First Parties a period of nine months in which to clear said title. In the event that it is necessary for First Parties to bring such suit the parties hereto will close the sale of said property and First Parties shall have the period of nine months in which to deliver said policy of Title Insurance, it being the intention of the Parties that the deeds, notes and mortgages shall be given as herein provided, but that First Parties may have nine months in which to deliver the policy of Title Insurance."

The 380 acres of land which the Jordans agreed to sell and convey to Mrs. Beauchamp consisted of 360 acres acquired by the Jordans from Columbia county and 20 acres which had been in the Jordan family for many years. A few days after the execution of the above agreement, an abstract company made a report as to all the land included in the contract. This report showed that the 20-acre tract was owned by Harvey Jordan and his wife, subject to an interest in G. W. Jordan and unpaid taxes. As to the remaining 360 acres of land, this report showed that it had been acquired through tax foreclosure proceedings by Columbia county and that the county had conveyed it to the

Jordans, reserving the mineral rights. The abstract company, following its usual practice, refused to issue title insurance for this 360 acres until title thereto had been quieted as against the record owners of the land at the time of the tax foreclosure proceedings by the county.

On August 1, 1941, and subsequent to the receipt of the above report, Harvey Jordan and Nora Jordan, his wife, and G. W. Jordan made and executed a warranty deed for the 380 acres, described in the foregoing agreement, to Laura Beauchamp, in which deed the mineral rights were reserved. This deed was filed for record on August 2, 1941, with the county clerk of Columbia county, Oregon. Also on August 1, 1941, Mrs. Beauchamp executed and delivered to the defendant Harvey Jordan the two notes for $2,000 each and a mortgage on the real property described in the above-mentioned agreement, which mortgage excepted the mineral rights. In this mortgage Mrs. Beauchamp covenanted that she was lawfully seized in fee simple of the mortgaged premises. This instrument was also filed for record on August 2, 1941.

The plaintiff contends that the deed for the Columbia county real property was never delivered to her and that she did not know it had been executed until more than a year after it had been filed for record. Harvey Jordan testified that he delivered the deed to Mrs. Beauchamp and that after she had executed the mortgage she returned the deed to him or his attorney in order that the deed and mortgage might be filed for record at the same time. Mr. Bennett, attorney for the Jordans, admitted at the trial that he had filed both the deed and mortgage for record. After they had been recorded and returned to him he had retained

the deed until about October 1, 1942, at which time he mailed it to Mrs. Beauchamp's attorney.

In Mrs. Beauchamp's original reply, which was verified by her May 21, 1943, (the case was tried on the amended reply) she alleged as follows:

"That in accordance with said agreement, [referring to the contract between her and the Jordans, dated July 28, 1941] plaintiff on or about the 1st day of August, 1941, made, executed, and delivered to the defendant Harvey H. Jordan, a certain Indenture of Mortgage, a copy of which is attached to Harvey H. Jordan's Answer herein as Exhibit F, and on or about said date, the defendant, together with one G. W. Jordan, made, executed, and delivered to the plaintiff a certain deed of conveyance, a copy of which is attached hereto as Exhibit II, and by this reference made a part hereof."

These allegations of the reply were admitted in evidence. Exhibit F is the mortgage which she executed and delivered to Harvey Jordan, to which attention already has been directed, and Exhibit II therein referred to is a copy of the warranty deed from the Jordans to Mrs. Beauchamp for the Columbia county real property.

Within a few days after the aforementioned deed and mortgage were executed Mrs. Beauchamp took possession of and transferred her cattle to the land. The livestock was kept there several months, until there was no longer any feed. She then moved the bulk of the cattle to Tillamook county and the balance of them elsewhere, leaving a tenant in possession of the property.

■ Plaintiff's contention that there was a "total absence and failure of consideration" for the two $2,000 notes is based in part, if not entirely, on the erroneous

premise that no deed to the real property had been delivered to her. There is a presumption that these notes were given for a valuable consideration. § 69-201, O. C. L. A.; *United States Nat. Bank v. Embody,* 144 Or. 488, 507, 25 P. (2d) 149. Absence or failure of consideration is a matter of defense and the burden of proving it was on plaintiff, the maker of the notes. § 69-205, O. C. L. A.; *Bank of Gresham v. Walch,* 76 Or. 272, 147 P. 534. This she failed to do. Her statement that the deed was not delivered to her cannot be given much weight in view of the facts hereinbefore recited.

The abstracter's report on the title to the land was given to Mr. Jordan on August 1, 1941. It pointed out that in the deed from Columbia county to the Jordans the mineral rights had been reserved. Mr. Jordan testified that this was the first knowledge he had of such reservation; that he thereupon advised Mrs. Beauchamp of this defect in the title; and that he offered to return to her the deposit which she had made upon the purchase price and to cancel the contract. He further testified that Mrs. Beauchamp told him that she wanted the land for grazing purposes and was not interested in the mineral rights and that she agreed to accept a deed with this reservation. The deed and mortgage were then executed and delivered. Acceptance of the deed and the execution of the mortgage by Mrs. Beauchamp lends support to Jordan's testimony.

Plaintiff did not allege that any mistake was made in the preparation of the deed and mortgage, and therefore since they were executed and delivered after the agreement of sale they will be presumed to embody the final agreement of the parties. § 2-214, O. C. L. A.; *Libel v. Pierce,* 147 Or. 132, 31 P. (2d) 1106. Moreover, plaintiff alleged in her original reply that the deed

and mortgage were executed and delivered in accordance with the agreement of the parties. These instruments contained, as already has been pointed out, a reservation as to the mineral rights. We conclude that the original agreement was later modified, relative to the mineral rights, as contended by defendant Jordan.

■ In the agreement between the parties is was stipulated that Jordan should furnish Mrs. Beauchamp "a policy of title insurance showing marketable title in" the Jordans, and that if it was necessary to quiet title to the property the Jordans should have nine months in which to accomplish it. The report of the abstracter did not point out any defect in the title to the property except as hereinbefore stated. It seems to be conceded by the plaintiff that the title to 360 acres was acquired by the Jordans from Columbia county and that the county had acquired the property through tax foreclosure proceedings. There is no allegation or any evidence that the foreclosure proceedings were not valid, but, following the practice of the abstract company, it refused to issue a policy of title insurance on the land acquired through tax foreclosure proceedings until the successful prosecution of a suit to quiet title as against the record owners of the property at the time of the foreclosure.

It was further stipulated in the agreement that, in the event it became necessary to institute a suit to quiet title, the deed, "notes and mortgages shall be given as herein provided". This provision of the contract was construed by the parties thereto as requiring the execution and delivery of the deed, notes and mortgages therein referred to as soon as it could conveniently be done, because they did, as hereinbefore stated, execute and deliver these instruments on August 1, 1941, four

days after the agreement had been entered into. Mrs. Beauchamp, a few days later, took and ever since has retained possession of the property.

In order to maintain a suit to quiet title to real property, it is necessary that the plaintiff claim an interest or estate therein and that it is "not in the actual possession of another". § 9-1001, O. C. L. A. Defendant Jordan therefore could not maintain a suit to quiet title to this property for two reasons: (1) He is not claiming an interest or estate therein, and (2) the property is in the actual possession of Mrs. Beauchamp.

Mrs. Beauchamp argues that, even if Jordan could not have maintained a suit to quiet title, he could have maintained a suit to remove a cloud from the title to the property. This contention is based on the assumption that the deed from Jordan had never been delivered to her. In this she is in error, as previously stated. Furthermore, a suit to remove a cloud from the title to property would not accomplish the desired result. The purpose of a suit to quiet title in this instance was to remove any doubt as to the validity of the tax foreclosure proceedings. There does not appear to have been any instrument filed for record adversely affecting the county's title to the land since those proceedings were instituted. Therefore there was no cloud to be removed from the title to the property.

When Mrs. Beauchamp accepted the deed and went into possession of the property she prevented Jordan from instituting a suit in his own name to quiet title. Jordan paid the abstract company for a policy of title insurance; he also engaged an attorney and paid his fee for bringing such a suit. Mrs. Beauchamp first

agreed to have the suit brought in her own name, but, after delaying the signing of the necessary papers for some time, she finally refused to sign them.

There was an implied promise on the part of Mrs. Beauchamp that she would do nothing which would hinder or obstruct Jordan from carrying out his part of the contract. She knew that when she accepted the deed and went into possession of the property he could not have the title to the property quieted without her being a party plaintiff in such proceeding, and therefore there was an implied promise on her part to cooperate with Jordan to that extent. 3 Williston on Contracts. Rev. Ed. § 677, at p. 1956; 2 Restatement, Contracts, § 395, Comment c, p. 747. The refusal of Mrs. Beauchamp to permit her name to be used as plaintiff in the suit to quiet title excused Jordan from furnishing to her the policy of title insurance.

We have carefully examined the entire record and are of the opinion that the decree as entered was proper; therefore it is affirmed.